**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Christopher WOOD, Defendant–**
**Appellant.**

**No. 03–4427.**

United States Court of Appeals,
Fourth Circuit.

Aug. 4, 2004.

Argued: May 6, 2004.

Decided: Aug. 4, 2004.

prehended the "actual innocence" law, and in fact the Court discussed the gateway correctly at some length. App.I at 8–11.

**ARGUED:** Richard Charles Armstrong, Wyatt & Armstrong, P.L.C., Charlottesville, Virginia, for Appellant. Nancy Spodick Healey, Assistant United States Attorney, Office of The United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

Judge DUNCAN wrote the opinion, in which Judge WILKINSON and Judge KING joined.

## OPINION

DUNCAN, Circuit Judge:

Defendant Christopher Wood appeals from the district court's judgment, entered May 15, 2003, sentencing him to one hundred thirty-five months' imprisonment upon a guilty plea to one count of conspiracy to distribute narcotics in violation of 21 U.S.C. § 846. Wood sought to contest the drug weight attributed to him at sentencing, but the district court refused to hear evidence on this point. According to the court, Wood's plea agreement precluded him from doing so. Wood also sought relief under the "safety valve" provision of 18 U.S.C. § 3553(f). The district court held that such relief was unavailable as Wood did not satisfy all of the statutory requirements. We hold that the district court erred by denying Wood the opportunity to contest the drug weight attributable to him. We also hold that the district court correctly interpreted the "safety valve" provision. Accordingly, we reverse the district court in part, affirm in part, and remand for resentencing.

## I.

On April 9, 2002, Wood pled guilty, pursuant to a plea agreement, to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841. The plea agreement contained a provision limiting Wood's ability to contest the drug weight attributed to him:

I agree that the total drug weight for which I should be held accountable as reasonably foreseeable conduct relevant to my own actions is at least 500 grams, unless a presentence investigation finds a lesser amount. I understand that my attorney will argue that I should [b]e held accountable for less than 1.5 kilograms but that the United States intends to argue that I should be held accountable for more than 1.5 kilograms of cocaine base, unless the presentence investigation reveals a lesser amount.

J.A. 16 ("Drug Weight Clause"). Wood also agreed to waive his right to appeal any issues relating to his sentence under the sentencing guidelines, provided he first receive a "full and fair sentencing hearing." J.A. 17. Wood and his attorney signed this agreement on February 28, 2002. The Government signed it on March 4, 2002.

On April 9, 2002, the district court held a Rule 11 hearing to determine the appropriateness of Wood's plea. At that hearing, the district court repeatedly assured Wood that he would have the opportunity at sentencing to contest the drug weight attributable to him. First, Christopher Collins, Wood's defense counsel, explained to the district court that "our only disagreement is as to total amount [of drugs] and that will be argued at another time." J.A. 29. The district court responded, "Right." *Id.* Second, explaining to Wood that the length of his incarceration could not be determined until sentencing, the district court told Wood that his attorney would receive a probation officer's presentencing report, and that "[i]f you find something with which you do not agree, take that up with the probation officer and see if you can get it resolved.... If you cannot, then that will come on, that disagreement will come on at the time of the sentencing hearing." J.A. 33. Third, the following exchange occurred after the court asked Wood if he was pleading guilty of his own free will:

THE DEFENDANT: I am guilty, but only to a certain extent. What's being charged in the indictment as far as the total drug weight I don't feel I'm responsible for, but since we have the chance to argue, I feel—

THE COURT: That issue will be resolved through the presentence report and you'll have the opportunity there to present everything that you know about it in an effort to get to the right amount. If you're not in agreement with what the probation officer comes up with, *you still may be heard here in this court at the time of the sentencing hearing about what is the proper weight. So you will have two opportunities to persuade somebody of what the proper weight is;* first, the opportunity to persuade the probation officer and *if that is not successful, then the opportunity to show to the Court what the proper weight should be.* Does that clarify it for you?

THE DEFENDANT: Yes.

J.A. 39–40 (emphasis added).

After explaining Wood's ability to challenge the presentence report, the district court asked the Government to summarize its evidence against Wood. The Government called a state narcotics investigator to testify and, after the investigator described Wood's conduct, the prosecutor asked, "Understanding, of course, *that there will be a more full hearing at sentencing concerning the drug weight issue,*

does your investigation indicate that this defendant was responsible for, was aware of at least 500 grams of crack cocaine being distributed amongst or during the course of this conspiracy?" J.A. 42–43 (emphasis added). The investigator answered in the affirmative. The district court then turned again to Wood:

> THE COURT: ... Including the testimony here from the agent and everything else that has happened here in court this morning or this day, do you have any questions of any sort about anything? Now is the time. Get them out if you've got them.
>
> THE DEFENDANT: None that I can think of at the moment.
>
> THE COURT: After the moment is going to be a little bit late.
>
> MR. COLLINS: I think, again, Judge, he's referring to the issue of weight. There's nothing to comment on at this point.
>
> THE COURT: *The weight is certainly reserved for later.*

J.A. 43–44 (emphasis added). Neither the court nor the Government described Wood's ability to contest a drug weight finding as in any way limited. The district court thereafter accepted Wood's plea.

The probation office twice revised the presentence report. The original version estimated the drug weight as over 1.5 kilograms. Wood submitted written objections to this determination, arguing that its basis was speculative. The probation officer revised his finding, noting that "[a]ctual weight estimates by some of the co-conspirators alone totaled more than 285.5 grams of cocaine base." J.A. 108. The probation officer attributed an additional approximately 1.25 kilograms of crack cocaine to Wood based on co-conspirator statements that Wood had possessed "a 'sandwich bag and two or three Kleenex boxes' " of crack cocaine. *Id.*

On October 24, 2002, the district court held the first sentencing hearing in this case. Collins attempted to challenge the drug weight attributed to Wood in the presentence report, but the district court refused to consider it due to the Drug Weight Clause:

> THE COURT: It's hard to see how you can [object to the drug weight estimate in the presentence report] in light of the plea agreement.
>
> MR. COLLINS: That was part of the plea agreement. We agreed it would be a particular weight unless the evidence showed otherwise.
>
> THE COURT: Unless the probation officer found differently.
>
> MR. COLLINS: The second, actually, second and third revised editions, while the probation officer says it's 285 grams, he concluded from the co-defendant, he then says using his method of estimating—
>
> THE COURT: Are you challenging the language of the plea agreement which says that it's 500 or more grams unless the probation officer finds a different amount? Are you challenging that language?
>
> MR. COLLINS: I am in that I would like that evidence presented to the Court.
>
> THE COURT: On what basis? Are you saying it was fraudulent?
>
> MR. COLLINS: No. I'm saying it is estimated, Judge, and not something that can be relied on unless the Court hears the evidence.
>
> THE COURT: There's nothing about estimated in the plea agreement. It is the report of the probation officer. There are two ways of challenging that, as I see it. One is to assert that the probation officer was fraudulent in his calculations.

MR. COLLINS: I would not do that.

THE COURT: The other is that it is an abuse of discretion. Now, are you challenging on either of those bases?

MR. COLLINS: Judge, I can't say in good faith he did either of those. What I'm saying is it's merely an estimate and not something the Court can—

THE COURT: Go back to the plea agreement, Mr. Collins.

MR. COLLINS: I understand. Thank you.

J.A. 67–68. Because the district court believed that there was "substantial confusion here about exactly where we stand on drug weight," it granted the defendant's motion for a continuance. J.A. 69.

Two months later, Wood wrote a letter to the district court explaining that he was unsatisfied with his lawyer:

> Mr. Collins is not representing me and my best interest. He wants me to take responsibility for something that I'm not "fully" responsible for. I've admitted to selling drugs, but not the amount of cocaine base that I'm being charged with. The only way I can prove this is with the help and assistance of my attorney. I can see that he is not trying to help me argue my case. He wants me to accept the charge for what it is.

J.A. 124. He also complained that he had not heard from Collins since the October court appearance, that he no longer trusted him, and that he did not want to get a "Raw Deal" from "lack of counsel." *Id.*

On April 23, 2003, the Government filed its opposition to Wood's request to hold a hearing to determine the drug weight. It argued that the Drug Weight Clause barred Wood from challenging the presentence report's drug weight estimate. According to the Government, because the report estimated the drug weight as more than 500 grams but less than 1.5 kilograms, Wood's stipulation in the Drug Weight Clause eliminated the need for a hearing.

The district court held its second sentencing hearing on May 2, 2003. Collins asserted that he agreed with the Government's interpretation of the plea agreement, but that his client persisted that "it was his impression that he could contest the validity of the opinion of the probation officer." J.A. 77. The district court held that the Drug Weight Clause was unambiguous and precluded Wood from having a hearing on this issue.

The court also refused to grant Wood the benefit of the "safety valve" provision of 18 U.S.C. § 3553(f). In order to qualify for relief under the "safety valve," Wood had to, *inter alia,* "truthfully provide[ ] to the Government all information and evidence the defendant has concerning" the conspiracy in which Wood engaged. 18 U.S.C. § 3553(f)(5). Wood claimed that he satisfied this provision because he provided truthful information to the probation officer. The district court held that "the Government," as used in the statute, did not mean a probation officer, but rather referred to the prosecutor. Wood filed a timely notice of appeal as to both rulings.

## II.

■ The threshold issue we must address is whether Wood has waived his right to bring this appeal, a question we review *de novo. United States v. General,* 278 F.3d 389, 399 (4th Cir.2002). We conclude that he has not.

■ The Government is correct that the Drug Weight Clause of the plea agreement as written limited Wood's opportunity to argue the drug weight attributable to him at sentencing. However, as explained below, we find that the terms of the plea agreement were modified by the district

court's assurances regarding Wood's opportunity to challenge drug weight, without limitation, and the Government's failure to clarify, object or respond. Wood reasonably relied on the terms of the plea agreement as explained to him during the plea colloquy and as repeated and later acquiesced in by the Government, terms which were thereafter contradicted at sentencing. On the facts of this case, Wood's detrimental reliance on those representations precluded his receiving the "full and fair sentencing hearing" on which his waiver was contingent. J.A. 17.

## III.

■ Wood first argues that the district court erred by construing his plea agreement to deny him the opportunity to contest the probation officer's drug weight finding at sentencing.[1] The interpretation of a plea agreement is a question we review de novo. United States v. Bowe, 257 F.3d 336, 342 (4th Cir.2001). We agree with Wood, although on slightly different grounds than those asserted by him.

■ The law governing the interpretation of plea agreements is an "amalgam of constitutional, supervisory, and private [contract] law concerns."[2] United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). In most cases, contract principles will be "wholly dispositive" because "[n]either side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind." Id. "A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement and in accepting or rejecting the plea." United States v. McGovern, 822 F.2d 739, 743 (8th Cir.1987). Consequently, we hold "the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements." Harvey, 791 F.2d at 300.

■ The Government's heightened responsibility extends beyond the plea negotiation to all matters relating to the plea agreement. For example, in United States v. Martin, 25 F.3d 211, 217 (4th Cir.1994), we held that the Government, through its statement at sentencing, effectively modified the plea agreement. In the plea agreement, the Government had retained discretion in determining whether to make a motion for a downward departure based on Martin's presentence sub-

---

1. Wood also contends that the Drug Weight Clause is ambiguous with respect to whether he may contest the probation officer's estimate that "the defendant received over 500 [grams], but less than 1.5 kilograms of 'crack' cocaine." J.A. 118. According to Wood, the ambiguity arises because he stipulated in the plea agreement to 500 grams, unless the "presentence investigation finds a lesser amount." J.A. 16 (emphasis added). The estimation, Wood argues, is not a finding, and he should therefore be able to challenge it. This argument fails because, unless the Government has the drugs it attributes to a defendant in its possession and weighs them, the probation officer's "finding" will necessarily be an esti-

mate. Wood argues a distinction without a difference.

2. Because the rights with which a defendant bargains are constitutionally based, a plea agreement reflects due process concerns "that differ fundamentally from and run wider than those of commercial contract law." Harvey, 791 F.2d at 300. Our supervisory concerns stem from the judiciary's responsibility in federal prosecutions to maintain "public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." Id. (internal quotations omitted).

stantial assistance under U.S.S.G. § 5K1.1. *Id.* At sentencing, the Government committed to making that motion "within the next year." *Id.* (internal quotations omitted). We held that this statement constituted an oral modification of the plea agreement to make a timely motion, *id.*, despite the general rule against oral modifications of integrated written plea agreements, *see United States v. Fentress*, 792 F.2d 461, 463–65 (4th Cir.1986). The Government's failure to make the motion at sentencing—the only time at which a substantial assistance motion may be made for presentence assistance, *Martin*, 25 F.3d at 216—"resulted in a deprivation of [the defendant's] due process rights." *Id.* at 217. Thus, Government statements can modify a plea agreement even after the district court accepts it.

During the plea colloquy, the parties must disclose "all 'material terms' (or material 'details' or 'elements') of the agreement," *United States v. Moore*, 931 F.2d 245, 249 (4th Cir.1991) (interpreting Fed.R.Crim.P. 11(e)(2)), and the district court must verify the defendant's understanding of these terms, *see Hartman v. Blankenship*, 825 F.2d 26, 28 (4th Cir. 1987) (noting that federal courts "conduct extensive examinations of the pleader on oath and require acknowledgement of any written plea agreement in open court, *after oral examination of its terms* " (emphasis added)). Because the purpose of the plea colloquy is to establish that the defendant knowingly and voluntarily enters his plea, *Moore*, 931 F.2d at 249 (explaining that the Rule 11 hearing is intended "to probe the defendant's understanding of the consequences of his bargain, and the voluntariness of his entering it"), he will naturally, and quite reasonably, rely on the district court's characterization of the material terms disclosed during the hearing. *See United States v. Buchanan*, 59 F.3d 914, 918 (9th Cir.1995) ("Litigants," and in particular criminal defendants, "need to be able to trust the oral pronouncements of district court judges."). As a consequence, where a district court's *mis* characterization of a material term is sufficiently pervasive to alter a defendant's understanding of the terms of his plea, the Government's affirmative acquiescence in the court's explanation can serve to modify the terms of the plea agreement.[3] *Cf. Buchanan*, 59 F.3d at 917–18 (finding Government's silence in the face of district court's misstatements at sentencing hearing altered terms of plea agreement).[4]

This case presents the somewhat unusual circumstances that make application of the above rule appropriate. First, the district court did not adequately explain the Drug Weight Clause. During the plea colloquy, the district court *repeatedly* suggested that Wood would have the right to challenge the drug weight finding at sen-

---

3. This rule is similar to the principle of contract law that permits silence to constitute acceptance "when silence would be deceptive and beguiling." John D. Calamari & Joseph M. Perillo, The Law of Contracts § 2.18, at 80–83 & n.5 (4th ed.1998) (internal quotations omitted). We need not decide whether the Government's silence can, standing alone, constitute acceptance of a modification. As explained below, *infra* pp. 350–51, the Government's affirmative conduct contributed to Wood's understanding of the terms of his plea.

4. Courts have criticized *Buchanan* for holding that a district court's statements at sentencing could alter the terms of a plea agreement that the defendant understood at the time he entered his plea. *See, e.g., United States v. Teeter*, 257 F.3d 14, 25 (1st Cir.2001); *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir.2001). These criticisms do not apply here because the district court's misstatements in this case occurred at the plea colloquy, not during a subsequent hearing, and formed the basis of the defendant's understanding.

tencing. In one instance, the district court explicitly stated that if Wood's attempt to convince the probation officer of the proper weight "is not successful, then [he would have] the opportunity to show to the Court what the proper weight should be." J.A. 40. It then asked Wood, "Does that clarify it for you?" *Id.* Wood responded that it did. The Government not only failed to clarify or correct these statements, it also appeared to buttress the court's interpretation of the agreement. During her examination of the state narcotics investigator, the Assistant United States Attorney stated that "there will be a more full hearing at sentencing concerning the drug weight issue." J.A. 42. The district court thus misstated Wood's right to challenge the probation officer's drug weight finding and the Government actively acquiesced to the misstated right.

Second, Wood clearly relied to his detriment on the explanations he was given. Wood was given to understand that he would have an apparently unfettered opportunity at sentencing to dispute the amount of drugs attributed to him.[5] That this mistaken belief constituted a substantial factor in his decision to plead guilty is demonstrated by (1) Collins' explanation to the district court at the colloquy that the "only disagreement is as to total amount [of drugs]," J.A. 29; (2) Wood's subsequent attempts to challenge the drug weight; (3) his surprise at being precluded from doing

so; and (4) his letter to the district court after the first sentencing hearing complaining that his attorney was attempting to convince him "to take responsibility for something that I'm not 'fully' responsible for," J.A. 124. The district court's statements induced this expectation, and the Government's acquiescence to them made Wood's reliance reasonable.

We recognize that "[m]odification of the terms of a plea agreement is ... beyond the power of the district court." *United States v. Howle,* 166 F.3d 1166, 1168–69 (11th Cir.1999). However, both through its own question and its failure to correct the misimpression created by the district court, *the Government* effectively achieved such a modification on these facts. Consequently, the Government's successful attempt to block Wood from challenging the drug weight finding "resulted in a deprivation of [Wood's] due process rights." *Martin,* 25 F.3d at 217. That the Government's breach of the plea agreement was inadvertent "does not lessen its impact." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). As a result, Wood is entitled to specific performance of the modified plea agreement.[6] *Martin,* 25 F.3d at 217. We therefore vacate his sentence and remand for resentencing.

## IV.

Wood also argues that the district court erred by refusing to sentence

---

5. The Government argues that the record shows that Collins, Wood's counsel, understood the limitations imposed by the Drug Weight Clause, and that Collins had explained the provision to his client. But Collins' understanding of the provision is immaterial. "[T]he validity of a bargained guilty plea depends finally upon the voluntariness and intelligence with which the defendant—and not his counsel—enters the bargained plea." *Harvey,* 791 F.2d at 301.

6. In most cases in which the Government has breached its agreement with the defendant, we prefer to leave the fashioning of appropriate relief "to the sound discretion of the district court." *United States v. Jureidini,* 846 F.2d 964, 966 (4th Cir.1988). Wood does not seek to withdraw his guilty plea, however, "but only asks [for] the lesser relief of 'specific performance' of the [modified] plea bargain." *United States v. Brown,* 500 F.2d 375, 378 (4th Cir.1974). There is thus no reason to remand to the district court for a determination of the appropriate relief. *Id.*

him under the "safety valve" provision of 18 U.S.C. § 3553(f). This section requires a district court to sentence a defendant who meets the five statutory criteria without regard to any statutory minimum (but consistent with the sentencing guidelines). *Id.* The Government concedes that Wood has met four of the five requirements to warrant such relief.[7] The only dispute involves the fifth requirement — whether Wood "truthfully provided to the Government all information and evidence the defendant ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Wood argues that "the Government," as used in the statute, includes the probation officer to whom he spoke during the presentence investigation.[8] The Government responds that the term refers only to the prosecuting authority. We review *de novo* questions of statutory construction. *Orquera v. Ashcroft,* 357 F.3d 413, 418 (4th Cir. 2003).

The only circuits to have addressed this question agree with the Government. The First, Fifth, Seventh, and Ninth Circuits have each held that a probation officer is not the government for purposes of the safety valve. *See Emezuo v. United States,* 357 F.3d 703, 706 n. 2 (7th Cir.2004); *United States v. Contreras,* 136 F.3d 1245, 1246 (9th Cir.1998); *United States v. Jimenez Martinez,* 83 F.3d 488, 495–96 (1st Cir.1996); *United States v. Rodriguez,* 60 F.3d 193, 195–96 (5th Cir. 1995). Although not directly presented with the question, the Second Circuit has implicitly agreed. *United States v. Smith,* 174 F.3d 52, 56 (2d Cir.1999) (finding that defendant did not meet burden of proving he satisfied requirements of safety valve where he "conceded that he did not meet with or speak with anyone from the United States Attorney's office"). We agree with our sister circuits and hold that a defendant does not meet the requirements of the "safety valve" provision merely by meeting with a probation officer during the presentence investigation.

Our analysis begins with the text of the statute. *United States v. Johnson,* 325 F.3d 205, 208 (4th Cir.2003). Other than the clause at issue here, section 3553(f) twice refers to "the Government." First, the section provides that the district court may sentence below the statutory minimum only "after the Government has been afforded the opportunity to make a recommendation." 18 U.S.C. § 3553(f). Second, the statutory minimum can be ignored even though the defendant "has no relevant or useful other information to provide or [if] the Government is already aware of the information." *Id.* § 3553(f)(5). These references to the government plainly contemplate the prosecuting authority, for

---

7. These four criteria are that: (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense ... [or engaged in a continuing criminal enterprise.] 18 U.S.C. § 3553(f).

8. Ordinarily, the discretionary denial of a downward departure is not subject to appellate review. *United States v. Bayerle,* 898 F.2d 28, 30–31 (4th Cir.1990). Assuming that this rule applies to the denial of relief from a statutory minimum under § 3553(f), Wood's argument necessarily implies that the district court miscomprehended its authority to depart. We therefore have jurisdiction under 18 U.S.C. § 3742(a)(1) to review the district court's refusal to depart. *United States v. Ivester,* 75 F.3d 182, 183–84 (4th Cir.1996).

only the United States Attorney's office would make a recommendation for or against application of the "safety valve" or be able to make use of the defendant's knowledge. *Contreras,* 136 F.3d at 1246. As the Ninth Circuit noted, "[i]t would be strange if a different meaning was intended by 'the Government'" in its third use. *Id.*

In addition, § 3553(e) permits, "[u]pon motion of *the Government,*" a departure below the statutory minimum sentence "so as to reflect the defendant's substantial assistance in the investigation or prosecution of another person." 18 U.S.C. § 3553(e) (emphasis added). This use of the "Government" can only refer to the prosecutor. *See Jimenez Martinez,* 83 F.3d at 495–96 (drawing same conclusion from substantially identical provisions in Sentencing Guidelines §§ 5C1.2 & 5K1.1).

Wood argues that our decision in *United States v. Fant,* 974 F.2d 559 (4th Cir.1992), compels an interpretation of "the Government" that includes a probation officer. In *Fant,* we held that, under U.S.S.G. § 1B1.8, a defendant's self-incriminating statements to a probation officer could not be used to determine the applicable guideline range where those statements were made pursuant to a grant of use immunity. *Id.* at 563–64. Section 1B1.8(a) provides:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

We concluded that this language "offers no suggestion of a limitation or preclusion of the use of incriminating statements based on whether the government official eliciting the statements was a prosecution official or some other government representative." *Fant,* 974 F.2d at 563. Wood contends that there is similarly no basis in § 3553(f) to distinguish between the probation officer and the prosecutor. We disagree.

Section 1B1.8 does not use the term "government" in a way that would include a probation officer. *See Rodriguez,* 60 F.3d at 195–96 ("Neither § 1B1.8 nor its commentary equate a probation officer with the Government. Rather, the commentary implies the opposite."). A defendant "agrees to cooperate with the government" by agreeing to cooperate with the prosecutor. Moreover, *only* the prosecutor may extend use immunity to a defendant. *See United States v. Abbas,* 74 F.3d 506, 512 (4th Cir.1996) ("[T]he prosecution is vested with the sole discretion to grant immunity."). Thus, like § 3553(f), § 1B1.8(a) uses "the government" in such a manner that it could only refer to the prosecutor.

Our holding in *Fant* simply reflects the fact that nothing in the language of the guideline limits the defendant's immunity to statements made to counsel for the United States. Rather, the guideline precludes the use of any self-incriminating information "provided *pursuant to the [cooperation] agreement,*" U.S.S.G. § 1B1.8(a) (emphasis added), no matter to what government official that information is provided. The ultimate focus of the inquiry under § 1B1.8 is whether the defendant's statements were made "as a result of his compliance with the terms of [the cooperation] agreement" and his accompanying immunity. *Fant,* 974 F.2d at 564 (internal quotations omitted). Thus, our decision in *Fant* does not support Wood's position.

■ Because the other uses of the term "the Government" in § 3553(f) in particular, and § 3553 in general, all plainly refer to the prosecuting authority, we hold that "the Government" as used in § 3553(f)(5) does not include the probation officer who prepares the presentence report. Our sister circuits have additionally asserted other bases for this conclusion, *e.g.*, *Rodriguez*, 60 F.3d at 196 (reading the safety valve *in pari materia* with Fed. R.Crim.P. 32), and although we do not necessarily disagree with these rationales, we need not address them. Where the text of a statute provides an unambiguous answer, we need look no further. *Johnson*, 325 F.3d at 208.

## V.

For the foregoing reasons, we reverse in part and affirm in part the district court's judgment, vacate Wood's sentence, and remand the case for resentencing consistent with this opinion.

*REVERSED IN PART, AFFIRMED IN PART, AND REMANDED*