FILED
United States Court of Appeals
Tenth Circuit

August 20, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS RENE VILLA-VAZQUEZ,

Defendant - Appellant.

No. 07-3160

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 06-CR-10238-MLB)**

---

Timothy J. Henry, Assistant Public Defender, Federal Public Defender Office, Wichita, Kansas, for Defendant - Appellant.

Brent I. Anderson, Assistant United States Attorney, (Eric F. Melgren, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff - Appellee.

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Jesus Rene Villa-Vazquez was indicted in the United States District Court for the District of Kansas on one count of illegal reentry after deportation for an aggravated felony. He entered into a plea agreement that required the

government, among other things, to refrain from bringing further charges and to recommend both a sentence reduction for acceptance of responsibility and a sentence at the low end of the sentencing range under the United States Sentencing Guidelines (USSG). The district court accepted his guilty plea but elected to await the probation office's presentence report (PSR) before deciding whether to accept the plea agreement. Before sentencing, however, the government objected to the PSR's recommendation that Mr. Villa-Vazquez be given a reduction in offense level for acceptance of responsibility, and it urged an upward departure and variance from the Guidelines computation. The court varied upward from the Guidelines because of Mr. Villa-Vazquez's criminal history and sentenced him to 120 months' imprisonment. On appeal Mr. Villa-Vazquez contends that (1) the government breached the plea agreement; (2) the district court did not adequately explain its reasons for imposing an upward variance; (3) the district court erred in relying on factual assertions in the PSR that he contested; and (4) his criminal history did not support the upward variance. We have jurisdiction under 28 U.S.C. § 1291. We reverse the sentence on the first ground and remand for resentencing before a different judge. The government was bound by the plea agreement after Mr. Villa-Vazquez's guilty plea was accepted by the court, and it blatantly violated its promises under the agreement.

## I.    BACKGROUND

Mr. Villa-Vazquez, a citizen of Mexico, was convicted in Kansas state court in 2003 on a charge of criminal discharge of a firearm at a dwelling (the firearm-discharge offense), *see* Kan. Stat. Ann. § 21-4219(b), and was deported to Mexico in March 2006.  On August 8, 2006, he was found in Topeka, Kansas, without having obtained permission to reenter the United States.

On November 1, 2006, Mr. Villa-Vazquez was indicted for illegal reentry after deportation for an aggravated felony, *see* 8 U.S.C. § 1326(a), (b)(2).  He then reached a plea agreement, which the government signed on January 12, 2007, and which he and his counsel signed four days later.  The government promised that it would not file additional charges; that it would recommend either a 60-month sentence if Mr. Villa-Vazquez received a 16-level enhancement under USSG § 2L1.2(b)(1)(A), or a sentence at the low end of the Guidelines sentencing range if he did not receive that enhancement; and that it would recommend an offense-level reduction for acceptance of responsibility.  The relevant language, which appears in Paragraph 4, states:

> In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:
>
> a.    To not file any additional charges against the defendant arising out of the facts forming the basis for the present indictment.
>
> b.    There is an issue in this case as to whether the "crime of violence" specific offense characteristic of U.S.S.G.

Section 2L1.2(b)(1)(A) applies, which would result in a 16-level enhancement. The parties intend to litigate that issue, and if the defendant prevails, the United States agrees to recommend the low-end guideline sentence, and agrees that it will not recommend an appeal of any Court finding in this case that § 2L1.2(b)(1)(A) does not apply.

If the United States prevails and the Court applies the 16-level enhancement, the parties both agree to recommend to the Court an incarceration sentence of 60 months, which is likely to constitute a modest downward variance from what would be the applicable guideline range.

If the Court applies the 16-level enhancement but chooses to sentence the defendant to more than 60 months' incarceration, the defendant reserves his right to appeal the "crime of violence" sentencing issue, which is a specific exception to the general appeal waiver set out in paragraph 8 below.

c.  To recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if the defendant's offense level is 16 or greater, the United States will move at the time of sentencing for the defendant to receive an additional one (1) level reduction for acceptance of responsibility because the defendant timely notified the government of his intention to enter a plea of guilty.

R. Vol. I, Doc. 8 at 3–4. These commitments were conditional, however, on Mr. Villa-Vazquez's not breaching the agreement and his continuing to act in a manner consistent with acceptance of responsibility. Regarding this latter condition, Paragraph 4 of the agreement specifically provides:

-4-

The government's obligations concerning its agreements listed in this paragraph are contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the United States reserves the right to withdraw all of its recommendations without breaching this agreement.

*Id*. at 4. Also, paragraph 10 of the agreement stated:

The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty. The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

*Id*. at 7–8.

At the plea hearing on January 16, 2007, the district court conducted an extensive colloquy to establish that Mr. Villa-Vazquez was pleading, and had entered into the plea agreement, knowingly, intelligently, and voluntarily. Among the court's questions was: "And you understand that you cannot withdraw your plea and ask for a trial if you don't like the sentence that you ultimately

-5-

receive[?]" Mr. Villa-Vazquez answered, "Yes, sir." R. Vol. II at 6–7.

Mr. Villa-Vazquez pleaded guilty. The court accepted the plea but said that it

was deferring decision on whether to accept the plea agreement:

> I find that the Defendant has made his plea freely, voluntarily and because he is guilty as charged; not out of ignorance, fear, inadvertence or coercion; and with a full understanding of its consequences. I further find that he has admitted the essential elements of the crime charged and is mentally competent. Pursuant to Rule 11 and Advisory Guideline 6B1.1, I will defer my decision to accept or reject the plea agreement until I've seen the presentence report.
> All right. The Defendant will be sentenced on April 2nd at 10 a.m. If there's nothing further, he's remanded pending sentence.

*Id*. at 11.

On February 13, 2007, the initial draft of the PSR was distributed to the

parties. The PSR assigned Mr. Villa-Vazquez a base offense level of 8. *See*

USSG § 2L1.2(a). It resolved against the government the issue whether his

firearm-discharge offense was a "crime of violence," and it increased his offense

level by 8, rather than 16, for that prior conviction. *See id*. § 2L1.2(b)(1)(C). It

then reduced the offense level by 2 for acceptance of responsibility, *see id*.

§ 3E1.1(a), leading to a total offense level of 14. Mr. Villa-Vazquez's numerous

Kansas criminal and traffic convictions produced 11 criminal-history points, and

he received an additional 3 points because he had committed the federal offense

while on probation and less than two years after being released from prison. *See*

*id*. § 4A1.1(d), (e). His 14 criminal-history points placed him in criminal-history

-6-

category VI. As a result, his Guidelines sentencing range was 37 to 46 months in prison.

The PSR suggested, however, that this Guideline sentencing range might not be appropriate. Citing Mr. Villa-Vazquez's numerous prior criminal convictions, it stated that an upward departure might be warranted on the ground that his criminal-history category did not adequately reflect the seriousness of his criminal history, *see id.* § 4A1.3(a) (providing for upward departure based on inadequacy of criminal-history category), and that "[i]t appear[ed] highly likely that Mr. Villa-Vazquez will continue criminal conduct in the future." R. Vol. V at 46. In addition, referencing police reports that Mr. Villa-Vazquez had been involved with a street gang and had engaged in aggravated kidnaping, aggravated battery, and domestic violence, the PSR stated that there may be grounds for a sentence "outside the advisory guideline system." *Id.* at 46.

Two matters in the PSR are of particular significance to this appeal. First, the PSR determined (and the government did not later contest) that Mr. Villa-Vazquez's firearm-discharge offense was not a crime of violence. This determination simplified the government's commitments under paragraph 4(b) of the plea agreement; now its sole presentencing commitment under the provision was to "agree[] to recommend the low-end guideline sentence." R. Vol. I, Doc. 8 at 3. Second, the PSR included information regarding an alleged fight in the county jail between Mr. Villa-Vazquez and another inmate on November 6, 2006.

Jail officials found Mr. Villa-Vazquez guilty of battery, so he was placed in disciplinary segregation. Based on this information, the government's response to the PSR contended that it was no longer bound by the plea agreement. Citing the clause in the plea agreement permitting it to withdraw from its obligations if Mr. Villa-Vazquez "engage[d] in additional criminal conduct," *id.* at 4, the government objected to the reduction for acceptance of responsibility, arguing that "[a] person who engages in criminal conduct while being held in jail during the pendency of another case cannot be said to have 'clearly demonstrated acceptance of responsibility for his offense.'" R. Vol. V at 48 (brackets omitted) (quoting USSG § 3E1.1(a)).

Mr. Villa-Vazquez's response to the PSR objected to an upward departure or variance on several grounds, including: (1) he denied the allegations in police reports referenced in the PSR; (2) the alleged incidents involving aggravated kidnaping and aggravated battery never led to arrest; and (3) the police reports described in the PSR may not be used to support an upward departure or variance. He also asserted that the alleged jail incident on November 6, 2006, could not relieve the government of its promises under the plea agreement, because that agreement was not entered into until months later, so the incident could not be *additional* criminal conduct.

With respect to the issue of departure or variance, the government passionately replied:

The defendant's objection is meritless. Mr. Villa's criminal history may deserve enhanced scrutiny, which is all the probation office suggests in [the PSR]. It is impossible to read Mr. Villa's [PSR] without coming away with a pit in one's stomach in contemplat[ion] of the sheer magnitude of his grotesque conduct. Not only should an upward departure, and an upward "variance," be considered, as the probation office suggests, they should be applied to the degree that is appropriate. That will be the request of the United States in its sentencing memorandum.

*Id.* at 51.

On April 12, 2007, the district court sent the parties a letter addressing the PSR and the parties' responses. It expressed the court's view, subject to further authority from the government, that Mr. Villa-Vazquez was entitled to a two-level reduction for acceptance of responsibility and that the government was obligated to move for an additional one-level reduction. It also gave notice that it was contemplating an upward departure or variance, and set forth the following reasons for believing that a departure or variance was warranted:

[T]here is no limitation on the information which I may consider concerning defendant's background, character and conduct in arriving at an appropriate sentence and in deciding whether to vary under section 3553(a) and if so, the extent of the variance. Defendant is now 27 years old. Since age 15, he has continually violated the law. Many of the violations relate to traffic laws. When viewed individually, the violations are not that serious but when considered all together, they demonstrate that defendant has no respect for the law and that his past involvement with authorities has not deterred him from criminal conduct. Other violations, including convictions, are more serious. Defendant has convictions for misdemeanor domestic battery, possession of a concealed deadly weapon, obstructing legal process, possession of marijuana, driving while suspended (which includes information that defendant failed to appear on at least two occasions), criminal discharge of firearm at an

-9-

occupied dwelling and failure to pay drug dealer tax. Defendant was on probation when [he] illegally reentered the United States. Defendant has failed to pay court-ordered child support. Taken separately or together, these circumstances point to a defendant who not only does not respect the laws of the state of Kansas and of the United States (after all, the offense of conviction is aggravated illegal reentry) but likewise a defendant who must receive a sentence which affords adequate deterrence to further criminal conduct and protects the public from further crimes. I am sure that [defense counsel] will point out that when defendant is finished serving his sentence, he will be deported with orders not to reenter the United States. As counsel and the court are well aware from the literally hundreds of cases in this court, deportation has proven (and is increasingly proving) to be a useless act when a defendant is determined to return to the United States. In defendant's case, he was deported on March 3, 2006. By at least August 8, 2006, defendant was back in the United States illegally. Any or all of these circumstances will justify a variance.

R. Vol. I, Doc. 12 at 3. It also said, "If the government seeks to get out of the plea agreement, it will have to file a motion," and it instructed the parties to file by April 20 "simultaneous memoranda addressing the issues of departure and/or variance." *Id.*

The government's memorandum (1) withdrew its prior statement that it was not bound by the plea agreement; (2) withdrew its objection to a reduction for acceptance of responsibility and, "pursuant to the terms of the plea agreement," recommended a three-level reduction, *id.,* Doc. 13 at 1; (3) stated that it had "no basis upon which to dispute" the PSR's observations regarding the potential for an upward departure or variance but withdrew its earlier comments in support of an upward departure or variance, *id.* at 2; and (4) stated that it had "no dispute or

disagreement with the Court's legal and factual observations and analysis contained in [the court's April 12 letter]," *id*. In his memorandum Mr. Villa-Vazquez made various arguments why the allegations contained in the PSR did not support an upward departure or variance.

In a reply memorandum filed on April 26, the government stated that "[n]othing in this response is intended to or should be construed to conflict with or undermine the government's stated intention in its initial response to abide by the plea agreement herein, including the recommending of a sentence at the low end of the applicable guideline range,"*id.*, Doc. 15 at 1. But the reply proceeded to present again an impassioned argument in favor of an upward departure or variance, stating, in part:

> The United States observes further, and as the defendant well knows, that it is only a bizarre and unintended quirk that the defendant's total offense level is 13 instead of 21 (an eight-level difference). The notion that shooting a gun into an occupied house with the intent to intimidate a rival gang member isn't a crime of violence that elicits the 16-level enhancement is ludicrous . . . , and not even [defense counsel] would suggest that reflects the intent of the sentencing commission, yet that appears to be the result when applying the "categorical" approach to the crime of conviction. Nonetheless, a sentencing court could, should and would take that into consideration in determining an appropriate sentence.

*Id*. at 2–3.

Mr. Villa-Vazquez responded the next day. Contending that the government had breached the plea agreement, he sought specific performance—"a

sentence of 33 months, the low end of the applicable guideline range"—or, in the alternative, resentencing before a different judge. *Id.*, Doc. 16 at 4.

The debate continued on May 3, when the government filed a "Sur-Reply." It contended: *"There is nothing in the plea agreement in this case that precludes the United States from filing a motion for upward departure* (forgive the emphasis). Therefore, nothing the government has said concerning the Court's consideration of an upward departure violates the plea agreement." *Id.*, Doc. 17 at 1. The government's attempted explanation suggested that the "guideline sentence" refers to the sentencing range after any departures from Guidelines calculations:

> In all his gyrating the defendant misses a crucial and controlling point: While the United States has agreed "to recommend the low-end guideline sentence" . . . , until the Court determines what the appropriate guideline sentencing range is, there is no way the United States knows what the low-end is. Whatever it turns out to be, the United States has agreed to recommend it and advocate for it—it will perform as it has agreed to in the plea agreement. No sentencing hearing has occurred in this case, and comments made by the government concerning the guideline sentence are not precluded by the plea agreement if they relate to the Court's determination of what the appropriate guideline sentence is. The defendant assumed in his response that the plea agreement had language that precluded a motion for upward departure—an integral part of the proper determination of an appropriate sentence—but it does not.

*Id.* at 1–2. It added that the government's previous comments were made in response to the district court's "specific directive." *Id.* at 2. Finally, on May 7 Mr. Villa-Vazquez filed a "Memorandum in Response to Government's Sur-

Reply," stating that "[i]t is without question the defendant and defense counsel understood 'low-end' to be of the applicable guideline range before the Court were to depart or vary from said range." *Id.*, Doc. 18 at 2.

On May 16 the district court sent the parties a second letter, advising them, among other things, that it did not believe that the government had breached the plea agreement, because (1) the court had not accepted the plea agreement; (2) the court provided the parties with notice of its intention to impose an upward departure or variance; and (3) the government had expressed an intention to abide by the terms of the plea agreement. In a May 18 response to this letter, Mr. Villa-Vazquez reiterated his claim of breach and requested that the case be transferred to a different judge for specific performance of the plea agreement. The government did not file a response to the court's May 16 letter.

At the sentencing hearing on May 21, 2007, the district court, although stating that it had no concerns about the government's commitment not to bring further charges against Mr. Villa-Vazquez, rejected the plea agreement on the ground that "it would call for a too lenient sentence." R. Vol. III at 20. It offered Mr. Villa-Vazquez an opportunity to withdraw his guilty plea, which he declined. The court did not rule on whether the government had honored its promises under the plea agreement, explaining, "[T]he plea agreement was never binding in the first place because I had not accepted it. A plea agreement is neither binding nor

-13-

enforceable until it is accepted in open court. You cannot breach an agreement that is not binding." *Id*.

Turning to the imposition of sentence, the district court entertained argument on the possibility of an upward variance. The government stated that it did not have an objection to an upward departure or variance, adding that "all the methods for variance or departures that [were outlined in the PSR] appeared appropriate, appeared to be consistent with Tenth Circuit law, appeared to be valid in their authorizing the Court to do that which it indicated that it was considering doing." *Id*. at 30. In response, defense counsel repeated his previous written objections. He urged a sentence within the PSR's calculation of the Guidelines range, which was 37-46 months' imprisonment. The court varied upward, sentencing Mr. Villa-Vazquez to 120 months' imprisonment.

## II.    DISCUSSION

### A.    Breach of the Plea Agreement

Mr. Villa-Vazquez contends that the government breached the plea agreement (1) by objecting to the offense-level reduction for acceptance of responsibility and (2) by supporting the PSR's recommendation for an upward departure or variance. We review de novo a claim that the government has breached a plea agreement. *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1250 (10th Cir. 2006). "Where the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S.

Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea." *United States v. Stemm*, 847 F.2d 636, 637 (10th Cir. 1998). "This Circuit uses a two-step analysis to determine whether the United States violated a plea agreement: the sentencing court should 1) examine the nature of the promise; and 2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *United States v. Guzman*, 318 F.3d 1191, 1195–96 (10th Cir. 2003). "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement." *Id*. at 1195.

The government acknowledges that it promised "to recommend that the defendant receive a two-level reduction for acceptance of responsibility, and . . . to recommend a low-end guideline sentence . . . ." Aplee. Br. at 1–2 (citation to record omitted). Yet the government did precisely the opposite in response to the PSR. Citing Mr. Villa-Vazquez's alleged jail misconduct, the government "urge[d] the probation office to remove all three points for acceptance of responsibility . . . ." R. Vol. V at 48. In addition, the government supported the PSR's recommendation for an upward departure or variance. To repeat the government's language:

> Mr. Villa's criminal history may deserve enhanced scrutiny . . . . It is impossible to read Mr. Villa's [PSR] without coming away with a pit in one's stomach in contemplat[ion] of the sheer magnitude of his

-15-

grotesque conduct. Not only should an upward departure, and an upward 'variance,' be considered, as the probation office suggests, they should be applied to the degree that is appropriate.

*Id.* at 51. Then, responding to Mr. Villa-Vazquez's sentencing memorandum, the government expressed its displeasure that Mr. Villa-Vazquez's firearm-discharge offense supported only an 8-level, rather than a 16-level, increase in his offense level. It wrote, in an apparent attempt to convince the court to cure this "error" by varying from the Guidelines:

> The United States observes further, and as the defendant well knows, that it is only a bizarre and unintended quirk that the defendant's total offense level is 13 instead of 21 (an eight-level difference). The notion that shooting a gun into an occupied house with the intent to intimidate a rival gang member isn't a crime of violence that elicits the 16-level enhancement is ludicrous (as outlined in P[SR] ¶ 55, p. 21), and not even [defense counsel] would suggest that reflects the intent of the sentencing commission, yet that appears to be the result when applying the "categorical" approach to the crime of conviction. Nonetheless, a sentencing court could, should and would take that into consideration in determining an appropriate sentence.

R. Vol. I, Doc. 15 at 2–3. At the sentencing hearing the government told the court, "[A]ll the methods for variance or departures that [were outlined in the PSR] appeared appropriate, appeared to be consistent with Tenth Circuit law, appeared to be valid in their authorizing the Court to do that which it indicated that it was considering doing. So I think we have and we don't have any objection to those." R. Vol. III at 30.

Remarkably, the government nevertheless contends that it "stood by" its promises under the plea agreement and merely provided the district court with information pertaining to relevant conduct. Aplee. Br. at 21. We beg to differ. The agreement would clearly convey to any defendant that the government promised not to object to the reduction for acceptance of responsibility and not to support an upward departure or variance. With regard to the second promise, the agreement states that the government would recommend "the low-end guideline sentence." R. Vol. I, Doc. 8 at 3. The adjective "low-end" presupposes that there is a range of guideline sentences. But the "guideline range" would not ordinarily be interpreted to mean the sentence arrived at after an upward departure or variance. On the contrary, the Guidelines defines *Departure* (except in the context of a change in criminal-history category under § 4A1.3) as "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence." USSG § 1B1.1 cmt. n.1(E). This language clearly implies that the "guideline range" is determined before any decision on departure.[1] Moreover, there may well be no specified guideline range after a variance. Judges who vary from the Guidelines generally do not declare a variance sentencing range before imposing sentence. Nothing in this case would

_____

[1]The same can be said of the Guidelines language regarding a departure that changes the defendant's criminal-history category. In that context the definition of *Departure* is "the assignment of a criminal history category other than the otherwise applicable criminal history category to effect a sentence outside the applicable guideline range." USSG § 1B1.1 cmt. n.1(E).

-17-

have suggested to Mr. Villa-Vazquez that the phrase "low-end guideline sentence" had an idiosyncratic meaning. The agreement itself (in a provision mooted by the determination that Mr. Villa-Vazquez's firearm-discharge offense was not a crime of violence) speaks of a "downward variance from what would be the applicable guideline range." R. Vol. I, Doc. 8 at 3. This language would be peculiar if the "applicable guideline range" is the range after all departures and variances. Moreover, any defendant would think it an empty promise for the government to say that it would recommend the "low-end guideline sentence," *id*., if the government could urge an upward departure or variance from the Guidelines range. The government's argument that it honored its promises reeks of the lamp.

The government seeks to be excused from complying with its promises on the ground that it was simply responding to the court's April 12 letter. But the government had initially breached its promises in response to the PSR and Mr. Villa-Vasquez's objection to an upward departure or variance; this was before the district court had requested its views. And in any event, the court's letter could not justify the government's advocacy. *See United States v. Scott*, 469 F.3d 1335, 1339 n.2 (10th Cir. 2006) (government breached plea agreement by arguing for two sentencing enhancements even though it was specifically directed by district court to comment on possible enhancements); *United States v. Brye*, 146 F.3d 1207, 1212–13 (10th Cir. 1998). The government should have explained to

the court that it had made promises in the plea agreement and then limited itself to what was permitted by Paragraph 10 of the plea agreement—namely, a "legally neutral" and "non-argumentative" presentation of facts. *Rodriguez-Delma*, 456 F.3d at 1250–51.

The government also claims to have retracted its statements. It certainly made an effort in that regard in its initial memorandum in response to the district court's April 12 letter. But the government's reply memorandum of April 26 was a return to advocacy for a departure or variance, and its surreply of May 3 clearly conveyed its intent when it stated that the plea agreement did not preclude the government from seeking an upward departure. At best, the government did not repeat the most egregious violations of the plea agreement; but that is far from an adequate retraction. *See United States v. Cachucha*, 484 F.3d 1266, 1271 (10th Cir. 2007) (breach occurred even though prosecutor did not repeat offending comments at second sentencing hearing). Nor was it adequate for the government to say merely that it intended to abide by the agreement. *See United States v. Vaval*, 404 F.3d 144, 153 (2d Cir. 2005). We need not decide when a retraction could cure a breach of a plea agreement. *See United States v. Amico*, 416 F.3d 163, 165 (2d Cir. 2005) (retraction was sufficient).

Alternatively, the government contends that it could not have breached the agreement because the agreement was not binding until the district court accepted it, which it did not. This contention requires us to answer a novel question: Is a

plea agreement binding on the government after the court has accepted the defendant's guilty plea but before the court has accepted the plea agreement itself? If we ignore the context of the decisions, we can find language in the case law that gives conflicting answers. For example, in *Santobello v. New York*, 404 U.S. 257 (1971), which held (as a matter of constitutional law) that the defendant was entitled to relief because the state had breached the plea agreement, the Court said, "[W]hen a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. This statement would seem to undermine the government's argument here. But there was no issue in that case regarding court acceptance of the plea agreement. On the other hand, we recently said, "Courts have held that under [Fed. R. Crim. P.] 11, a plea agreement . . . must be accepted by the court before it is binding." *United States v. Novosel*, 481 F.3d 1288, 1292 (10th Cir. 2007) (brackets and internal quotation marks omitted). The district court in this case relied on that statement in concluding that the government had not breached an enforceable plea agreement with Mr. Villa-Vazquez. In *Novosel*, however, the issue was whether the plea agreement had properly been modified, and the modification occurred before the guilty plea had been accepted. Thus, we had no occasion to discuss the enforceability of a plea agreement during the interval between acceptance of the plea and acceptance of the plea agreement.

Indeed, the parties have not cited to us any case in point, nor have we found any. The Supreme Court has left the issue open. In *United States v. Hyde*, 520 U.S. 670 (1997), the Court held that the defendant was bound by his guilty plea once it was accepted by the court, even though the court had not accepted the plea agreement. But the Court expressly stated that it was not deciding whether the government was also bound once the plea was accepted. *See id*. at 678 n.3. Nevertheless, governing law leads us to conclude that the plea agreement was binding on the government once Mr. Villa-Vazquez's plea was accepted.

To some extent the enforceability of a plea agreement is a matter of constitutional due process. *See Santobello*, 404 U.S. at 257. But that is not all. "The law governing the interpretation of plea agreements is an 'amalgam of constitutional, supervisory, and private contract law concerns.'" *Novosel*, 481 F.3d at 1291 (brackets omitted) (quoting *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004)). We have recognized that the "[r]ules of contract law inform [not only] the interpretation [but also the] enforcement of promises in a plea agreement." *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997).

> "In most cases, contract principles will be wholly dispositive because neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system . . . ."

*Novosel*, 481 F.3d at 1292, (quoting *Wood*, 378 F.3d at 348 (brackets and internal quotation marks omitted)).  In particular, the government has a "heightened responsibility [that] extends beyond the plea negotiation to all matters relating to the plea agreement."  *Wood*, 378 F.3d at 348.

Also, our decision must be informed by Fed. R. Crim. P. 11, which addresses pleas and plea bargains.  The Rule requires the court to accept a guilty plea only after engaging in an extensive colloquy advising the defendant of his rights and questioning the defendant to be sure he understands those rights and is entering the plea voluntarily.  *See* Fed. R. Crim. P. 11(b).  Any plea agreement must be disclosed to the court.  *See id*. Rule 11(c).  The Rule specifically treats three types of promises that the government may make in an agreement:

> [T]he plea agreement may specify that an attorney for the government will:
> (A) not bring, or will move to dismiss, other charges;
> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or
> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

*Id*. Rule 11(c)(1).  The court cannot reject an agreement described in subdivision B, such as an agreement to recommend a particular sentence or the

application of a particular sentencing factor; but it must advise the defendant that the court may reject the recommendation and that such rejection does not entitle the defendant to withdraw the plea. *See id*. Rule 11(c)(3)(B). As for a government promise of a type described in subparagraph A (such as a promise not to bring other charges) or C (such as a promise to agree that the plea is conditional on imposition of a particular sentence), the court must accept or reject the agreement; and if it rejects the agreement, it must give the defendant an opportunity to withdraw the plea. *See id*. Rule 11(c)(5). The court need not decide at the time of the plea whether or not to accept the agreement; it may, and generally does, await the presentence report before deciding. *See id*. Rule 11(c)(3)(A); USSG § 6B1.1 cmt. After the plea is accepted the defendant can withdraw it before sentencing only upon showing "a fair and just reason," Fed. R. Crim. P. 11(d)(2)(B), unless the court rejects the plea agreement, *see id*. Rule 11(d)(2)(A). *See also Hyde*, 520 U.S. 670.

Under general contract principles a plea agreement would be enforceable against the government once the defendant's plea of guilty is accepted in accordance with Rule 11. A totally executory plea agreement, whose promises have not been performed in any way by either party, may not be enforceable. *See Mabry v. Johnson*, 467 U.S. 504 (1984) (holding that state prisoner did not have constitutional right to enforce executory plea agreement). But "the ensuing guilty plea . . . implicates the Constitution," *id*. at 507–08, and also solidifies the

government's obligations under contract law. Once the defendant's plea is accepted, the defendant has detrimentally relied on the agreement. The defendant cannot escape the plea without showing "a fair and just reason" unless (and until) the plea agreement is rejected by the court. Fed. R. Crim. P. 11(d). Some courts have suggested that a plea agreement may become enforceable even before the defendant enters a guilty plea if the defendant otherwise detrimentally relies on the agreement. *See United States v. Wells*, 211 F.3d 988, 994 n.3 (6th Cir. 2000); *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992). We need not go so far in this case. It is enough to say that in general a defendant, by entering an accepted guilty plea, sufficiently relies to his detriment on a plea agreement that the government is bound by its promises in the agreement, at least until the agreement is set aside.

Perhaps public-interest concerns could make an agreement unenforceable against the government in special circumstances. For example, it may be discovered before sentencing that the charge to which the defendant pleaded does not state a criminal offense, so the agreed dismissal of all other charges would totally free the defendant of criminal responsibility. *Cf. United States v. McGovern*, 822 F.2d 739, 742, 747 (8th Cir. 1987) (such circumstance arose but acceptance of plea had been conditional—subject to review of PSR). We see no public interest, however, in allowing the government to breach its promises regarding sentencing recommendations simply because the court has not yet

-24-

accepted the plea agreement. After all, the court may decide to reject the plea agreement because it is persuaded to do so by government statements that were contrary to its promises in the plea agreement. Indeed, the Eighth Circuit, while stating that a "defendant is not justified in relying substantially on the terms of the plea agreement until the trial judge approves it and accepts the guilty plea," *id*. at 746, nevertheless said that "the government must, unless and until the court rejects the plea, honor in good faith its obligations under the agreement," *id*. at 744. The government has not presented to us, nor have we found, any modern case that has held that the government is not bound by a plea agreement after the court has accepted a guilty plea predicated on the agreement. Accordingly, we hold that, absent extraordinary circumstances, once a defendant's guilty plea has been accepted by the court, the government is bound by its plea-agreement promises regarding sentencing recommendations even if the plea agreement has not yet been accepted by the court, and even if it is ultimately rejected by the court (although, of course, after rejection the government is no longer bound with respect to making later recommendations).

Moreover, we observe that when the district court said that it was rejecting the plea agreement, its "rejection" was not in accordance with Rule 11. Rule 11(c)(3)(A) authorizes the court to reject a plea agreement only to the extent that it is of a type described in subparagraph (A) or (C) of Rule 11(c)(1), both of which address promises that bind the court. Subparagraph A concerns

-25-

government promises not to bring charges; subparagraph C concerns agreements that the plea is conditional on, for example, imposition of a particular sentence. Although the district court stated that it was rejecting the plea agreement, it did not reject any provision that would come under subparagraph A or C. The only such provision in the agreement was the government's promise not to bring further charges against Mr. Villa-Vazquez. But the court clearly accepted that provision, saying:

> I want the record to be really clear about this, that's the part that talks about dismissing other charges, what-not, nothing that I say or do here is to indicate that I have any disagreement whatsoever with the Government's exclusive decisions whether to charge or not charge or dismiss charges. All I said in my earlier letter was that it appeared that this was such an agreement; but my rationale here doesn't have anything to do with Rule [11(c)(1)(A)].

R. Vol. III at 17.

What the district court rejected was the government's recommendation that Mr. Villa-Vazquez be sentenced at the bottom of the applicable guideline sentencing range. The government's recommendation (unlike a promise not to bring charges, *see* Fed. R. Crim. P. 11(c)(1)(A), or an agreement that the plea is conditional on a specific sentence, *see id.* Rule 11(c)(1)(C)), was not binding on the court. Accordingly, the court certainly could refuse to follow the recommendation. But such refusal is not a rejection of the agreement itself. The court had no authority to reject the agreement just because it disagreed with the nonbinding recommendation. The government's promise to recommend a

sentence at the Guidelines's minimum was a promise that comes under subdivision B of Rule 11(c)(1), which is not subject to court approval. The court's sole obligation arising from a subdivision B promise was satisfied in this case: the court informed Mr. Villa-Vazquez at the plea hearing that he had no right to withdraw his plea if the court did not follow the sentencing recommendation. *See id.* Rule 11(c)(3)(B) (requiring that defendant be so informed). We need not decide whether a sentencing court has authority to reject a plea agreement on some ground not stated in Rule 11, because there was no such rejection in this case. (We should also point out that because the court did not in fact reject the plea agreement in accordance with Rule 11, it had no authority to allow Mr. Villa-Vazquez to withdraw his plea on the ground that his plea agreement had not been accepted. Withdrawal was permissible only for "a fair and just reason." *Id.* Rule 11(d)(2)(B).) It would be particularly inappropriate to adopt the government's view that it was not bound by the plea agreement until it was accepted by the court, when (1) the breach of the plea agreement occurred after the plea was accepted and (2) the plea agreement ultimately was accepted.

Because we conclude that the government breached the plea agreement, we turn to the question of remedy. The district court offered Mr. Villa-Vazquez the opportunity to withdraw his plea. But that was not adequate. We grant the remedy of resentencing before a different judge when the defendant does not seek

to withdraw his guilty plea, *see Cachucha*, 484 F.3d at 1271, unless the defendant requests resentencing before the same judge, in which case we grant him that remedy, *see United States v. Vandam*, 493 F.3d 1194, 1206 (10th Cir. 2007). When the defendant is content with the agreement and does not wish to go to trial, it is not proper to require that he either go to trial or take his lumps from the government's breach. As the First Circuit said in a similar situation, "[P]ermitting a judge to vacate a plea over defendant's objection on breach by the prosecution allows the government to back out of its agreement at will and obtain a trial." *United States v. Kurkculer*, 918 F.2d 295, 302 (1st Cir. 1990); *see United States v. Nolan-Cooper*, 155 F.3d 221, 241 (3rd Cir. 1998) (same); *United States v. Partida-Parra*, 859 F.2d 629, 635 (9th Cir. 1988) (same).

We conclude this discussion with two comments. First, requiring resentencing before a new judge is not intended to reflect upon the fairness of the sentencing judge, whose actions did not cause this result. *See Cachucha*, 484 F.3d at 1271. Second, we recognize that resentencing before a new judge cannot truly make Mr. Villa-Vazquez whole. The new judge cannot be entirely insulated from the government's misconduct. This reality makes that misconduct all the more reprehensible. Our present view, however, is that the public interest and the ends of justice require that the new judge be granted the discretion afforded under the original plea agreement. Mr. Villa-Vazquez is not entitled to a ruling that the new judge must accept the plea agreement's recommendation.

-28-

In light of our disposition, we need not address Mr. Villa-Vazquez's other contentions on appeal.

## III. CONCLUSION

We REMAND for resentencing before a different judge.