FILED
United States Court of Appeals
Tenth Circuit

January 14, 2025

Christopher M. Wolpert
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

PASCUAL A. RUIZ, JR.,

Defendant-Appellant.

No. 23-3172

_____

**Appeal from the United State District Court
for the District of Kansas
(D.C. No. 6:23-CR-10024-EFM-1)**

_____

Daniel T. Hansmeier, Appellate Chief, Kansas Federal Public Defender (Melody Brannon, Federal Public Defender, with him on the briefs), Kansas City, Kansas, for Defendant-Appellant.

Jared S. Maag, Assistant United States Attorney (Kate E. Brubacher, United States Attorney, and James A. Brown, Assistant United States Attorney, Chief, Appellate Division, with him on the brief), Topeka, Kansas, for Plaintiff-Appellees.

_____

Before **HARTZ**, **EBEL**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

This appeal concerns the government's obligation to fulfill a promise made in a plea agreement. Pascual A. Ruiz Jr. was convicted after pleading guilty to one count of possession of ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1). In his written plea agreement, the government agreed "[t]o recommend the defendant receive a sentence at the low end of the" applicable Guidelines range—here, 51 months' imprisonment. R.I at 23. At sentencing, the prosecutor recommended a custodial sentence of 51 months, but in doing so, also discussed Mr. Ruiz's criminal history score and his prior convictions. The district court ultimately relied on Mr. Ruiz's criminal history to depart upward under U.S. Sentencing Guidelines Manual § 4A1.3 (U.S. Sent'g Comm'n 2023) and imposed a 70-month prison sentence.

Mr. Ruiz now seeks reversal, contending for the first time on appeal the government breached the plea agreement by paying mere "lip service" to its promised sentencing recommendation. Op. Br. at 8. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I[1]**

**A**

In March 2023, a grand jury indicted Mr. Ruiz for illegally possessing a machine gun and ammunition under 18 U.S.C. § 922(o), (g)(1). Four months later, he entered into a written plea agreement with the government. Mr. Ruiz agreed to plead guilty to count three of the indictment—possession of ammunition by a convicted felon under 18 U.S.C. § 922(g)(1). The plea agreement included affirmative waivers of Mr. Ruiz's rights. He "waive[d] the right to appeal the sentence imposed in this case except to the extent, if any, the court departs or varies upwards from the applicable sentencing guideline range determined by the court." R.I at 25. And he "waive[d] all rights . . . to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act." R.I at 25.

In exchange, the government agreed (1) "[t]o not file any additional charges against the defendant arising out of the facts forming the basis for the Indictment;" (2) "[t]o recommend the defendant receive a two (2) level reduction

---

[1] We derive our facts from the appellate record, particularly the plea agreement, the sentencing transcript, and Mr. Ruiz's unobjected-to Presentence Investigation Report.

in the applicable offense level under" the U.S. Sentencing Guidelines Manual (U.S.S.G.) "§ 3E1.1 for acceptance of responsibility," and "if the defendant's offense level is 16 or greater, the United States will move at the time of sentencing for the defendant to receive an additional one (1) level reduction for acceptance of responsibility"; (3) "[t]o recommend the defendant receive a sentence at the low end of the U.S.S.G[.] sentencing range determined appropriate by the U.S. Probation Office; and" (4) "[t]o dismiss the remaining counts of the Indictment at the time of sentencing." R.I at 23. Only the government's promise to recommend a sentence at the low end of Mr. Ruiz's Guidelines range is at issue on appeal.

On July 12, 2023, Mr. Ruiz pled guilty under the plea agreement and was convicted of violating 18 U.S.C. § 922(g)(1). A probation officer then prepared a Presentence Investigation Report (PSR). The PSR calculated Mr. Ruiz's offense level as follows:

| | |
|---|---|
| Base offense level, U.S.S.G. §2K2.1 | 20 |
| Acceptance of responsibility, U.S.S.G. §3E1.1(a) | -2 |
| Additional reduction for acceptance of responsibility under the plea agreement, U.S.S.G. §3E1.1(b) | -1 |
| **Total Offense Level:** | **17** |

The PSR determined Mr. Ruiz was in criminal history category VI. Based on these calculations, the PSR concluded the advisory Guidelines range was 51 to 63 months' imprisonment.

The probation officer acknowledged "the Government and defendant have entered into a written plea agreement" in which "the Government has agreed to . . . recommend . . . a sentence at the low end of the applicable advisory Guideline range." R.II at 8. Still, the PSR discussed "factors that may warrant departure." R.II at 53 (capitalization omitted). The probation officer "identified" Mr. Ruiz's criminal history "as potential grounds for departure." R.II at 53. The PSR emphasized that "[f]rom November 2008 until July 2023, [Mr. Ruiz] had spent approximately 51% of his life incarcerated." R.II at 53. "Given [Mr. Ruiz]'s high likelihood of recidivism and having 18 Criminal History points," the PSR concluded, "an upward departure may be warranted." R.II at 53. The PSR explained, however, "[p]resentation of information in this section does not necessarily constitute a recommendation by the probation officer for a departure." R.II at 53. The PSR also addressed "factors that may warrant a sentence outside of the advisory guideline system." R.II at 53 (capitalization omitted). Again, the probation officer remarked Mr. Ruiz's "high

likelihood of recidivism" suggested "an upward variance may be warranted."

R.II at 53.[2]

Neither party filed objections to the PSR.

**B**

On September 27, 2023, the district court held a sentencing hearing for

Mr. Ruiz. The district court began by reciting the Guidelines calculations in

the PSR:

> [Mr. Ruiz] presents to this court at an offense level 17, criminal history category 6. I would note that he reached criminal history category 6 with 13 points.
>
> [Mr. Ruiz] has half again as many points as 13, but you top out at [criminal history category] 6, so that's as far as it goes.
>
> Based on that presentation, the Guidelines would suggest a sentence of 51 to 63 months incarceration to be followed by 1 to 3 years of supervised release.

R.III at 27. The district court then asked to "hear recommendations from the

parties as to" the appropriate sentence. R.III at 27. Because what happened

---

[2] "Departure" and "variance" are different mechanisms for arriving at a sentence outside the applicable Guidelines range. "A departure occurs 'when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines.' A variance occurs '[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors.'" *United States* v. *Sells*, 541 F.3d 1227, 1237 n.2 (10th Cir. 2008) (alteration in original) (quoting *United States* v. *Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007)).

next is central to the issue Mr. Ruiz raises on appeal, we recite the relevant portions of the sentencing transcript in detail.

Beginning with the government, the prosecutor stated,

Your honor, as you have seen no doubt from the plea agreement, the parties agree and the government agrees that as part of this agreement to recommend a sentence at the low end of the guideline range, which the court has already stated would be 51 months.

That is the sentence that we are asking the court to impose, and I want to make very clear that my comments that I am about to make, I am not suggesting in any way that I am asking for a sentence of anything other than 51 months. I think that's what the court should impose.

I am asking the court to impose that sentence[], but I do believe a sentence of 51 months is called for in this case given [Mr. Ruiz]'s criminal history of 6, which you stated, and in particular, given [Mr. Ruiz]'s previous convictions as detailed in paragraph 55 for discharge in an occupied dwelling, battery of a law enforcement officer, paragraph 61, attempted possession of a firearm—I'm sorry—I'm referring to the paragraphs in the presentence report.

Paragraph 74, previous federal case of being a felon in possession of a firearm and ammunition, and then, finally, the paragraph 77, a previous agg[ravated] assault conviction.

I believe, your Honor, given the nature of his criminal history, a sentence of 51 months in the Bureau of Prisons is appropriate, and we would ask that the court not go below 51 months.

R.III at 27–28.

The court then heard from Mr. Ruiz's lawyer. Defense counsel explained, "we are asking that [the court] impose the low end of 51 months" and sought to "address the concerns [the court] might have with [Mr. Ruiz's] criminal

history." R.III at 28. Mr. Ruiz's criminal history points were inflated by minor driving offenses, defense counsel argued:

> So if we ignore the three driving points, [Mr. Ruiz's prior convictions] would drop to 15 points. We don't think that is really sufficient for a departure or a variance above the criminal history category.
>
> . . . 51 months is not an insignificant sentence, and there are really, I think, two portions to a sentence. It's the amount of time you serve and how you serve it.
>
> [Here,] with [Mr. Ruiz]'s limited mobility, because of his gunshot wound, which includes often searing pain to his foot from circulation problems, the time he will serve here will be significantly more difficult than someone who wasn't suffering that injury.

R.III at 31.

After hearing from the parties, the district court began by discussing Mr. Ruiz's criminal history as described in the PSR.

> Mr. Ruiz's criminal history is nothing short of remarkable. It takes a presentence investigation report over 20 pages from paragraphs 40 through 78 . . . to count them . . . .
>
> He then has several more pages and paragraphs of charges that for various reasons, did not result in convictions. That takes us through paragraph 100 of his presentence investigation report.

R.III at 34. The court also identified its concern about Mr. Ruiz's prior convictions.

> Here is what I was concerned about. As paragraph 123 notes, for the last 15 years he has spent half of his life in prison, over 90 months, 7-and-a-half years in the last 15 years.
>
> My counts here may not be accurate, but I think he has three gun offenses. He has several other offenses, including two or three

8

counts of domestic battery. He has got an absconding charge. He has, I think a couple of counts of battery on a law enforcement officer. He has violence connected with gang activity. He has a charge for escape. He has controlled substance offenses. There is an agg[ravated] assault offense, and then there are lots of unscored offenses that go back to when he was 14.

. . . He has a long violent history. As I noted, he has spent half of his last 15 years in prison. He is 37. Based on the fact that he is again before the court, he does not appear[] to have learned anything from that experience.

And then perhaps the most remarkable, the report indicates that his own mother says that she feels safer when he's incarcerated.

Mr. Ruiz has been a menace to society. . . [and] these long offenses suggest that he has been on a criminal terror, again, as I said, since age 14, and we haven't made any impact on him in the criminal justice system.

R.III at 35–36.

The court then announced its intention to sentence Mr. Ruiz outside the applicable Guidelines range.

I am of the opinion that in this case the guideline range of 51 to 63 months is inadequate. I intend to sentence him to an above guideline range of 70 months incarceration because of this long pattern of serious criminal offense, which we have been unable to dissuade him from.

. . . I think based on his history, the more likely result here is him returning to criminal activity than it is him on his own reflection reforming his ways.

So I intend to impose an above Guideline range of 70 months incarceration. I intend to follow that by three years of supervised release.

R.III at 36–37.

9

Defense counsel asked the court to clarify whether it was imposing an upward departure or a variance. The court responded, "probably this one is more of a departure than a variance because of how I arrived at the tentative sentence that I have." R.III at 39.[3] Mr. Ruiz's attorney said, "we understand the court's reasons and we continue to object" to the custodial sentence of 70 months. R.III at 39.[4] The district court overruled the objection.

This timely appeal followed.

## II

Mr. Ruiz claims the government breached the plea agreement when, at sentencing, the prosecutor effectively advocated against the low-end Guidelines sentence the government promised to recommend. Mr. Ruiz did not object on this ground in the district court. Accordingly, our review—as Mr. Ruiz acknowledges—is only for plain error. *See United States* v. *Mendoza*, 698 F.3d 1303, 1309 (10th Cir. 2012) ("Because Mendoza's counsel did not object to the prosecution's breach of the plea agreement, we review for plain error.").

---

[3] Because Mr. Ruiz's only assignment of error is breach of the plea agreement, how the district court classified its above-Guidelines sentence does not impact our analysis or disposition in this case.

[4] Earlier during the sentencing hearing, defense counsel explained, "we do not [o]ppose the maximum term of supervision of three years." R.III at 33.

Under this standard of review, we reverse only "when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States* v. *Weiss*, 630 F.3d 1263, 1274 (10th Cir. 2010)); *see also United States* v. *Olano*, 507 U.S. 725, 732 (1993). Mr. Ruiz contends he has satisfied each element and urges us to vacate his sentence and remand for resentencing.[5] We are not persuaded. Even assuming a plain error occurred, affirmance is required because Mr. Ruiz has not met element three—that is, he has not "demonstrate[d] 'a reasonable probability that but for the error claimed, the result of the proceeding would have been different.'" *United States* v. *Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) (quoting *United States* v. *Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005)).

## A

The error claimed here is the government's breach of the plea agreement. An error is "plain" "if 'it is contrary to well-settled law.'" *United States* v. *Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020) (quoting *United States* v. *Garcia*, 946 F.3d 1191, 1202 (10th Cir. 2020)). And well-settled law exists when "either

---

[5] Mr. Ruiz also contends resentencing should proceed before a different judge. Mr. Ruiz does not develop this argument. *See EEOC* v. *C.R. Eng., Inc.*, 644 F.3d 1028, 1050 n.18 (10th Cir. 2011) ("Because [the appellant] has failed to present any argument or authority in support of this particular . . . claim, we decline to further consider it on appeal."). In any event, we need not consider this request further because we affirm.

11

the Supreme Court or this court [has] addressed the issue." *Id.* (quoting *United States* v. *Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)).

Mr. Ruiz argues the government plainly breached the plea agreement when the prosecutor invoked Mr. Ruiz's criminal history at sentencing while urging the court to impose a bottom-of-the-Guidelines sentence. According to Mr. Ruiz, "[t]he plea agreement required the prosecutor to 'recommend the defendant receive a sentence at the low end of the U.S.S.G[.] sentencing range determined appropriate by the U.S. Probation Office.'" Op. Br. at 11 (quoting R.I at 23). Here, all agree the applicable Guidelines range is 51 to 63 months' imprisonment. But at sentencing, Mr. Ruiz contends, the government "severely undermined its request [of 51 months] by anchoring that recommendation to 'the nature of [Mr. Ruiz's] criminal history' and expressly invoking Mr. Ruiz's criminal history category VI and several of his prior convictions." Op. Br. at 12 (second alteration in original) (quoting R.II at 28).

"The law governing the interpretation of plea agreements is an amalgam of constitutional, supervisory, and private contract law," with "[r]ules of contract law inform[ing] the interpretation and enforcement of promises in a plea agreement." *United States* v. *Novosel*, 481 F.3d 1288, 1291 (10th Cir. 2007) (first quoting *United States* v. *Wood*, 378 F.3d 342, 348 (4th Cir. 2004); and then quoting *United States* v. *Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997)). Of course, "[a] plea agreement . . . is not simply a contract between

12

two parties. It necessarily implicates the integrity of the criminal justice system." *Id.* at 1292 (quoting *Wood*, 378 F.3d at 348). It is well settled "the government is bound by its promises in the [plea] agreement." *United States* v. *Villa-Vazquez*, 536 F.3d 1189, 1200 (10th Cir. 2008).

As relevant here, we have held "[a] plea agreement may be breached when '[t]he government's attorney . . . [i]s not only an unpersuasive advocate for the plea agreement, but, in effect, argue[s] against it.'" *United States* v. *Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007) (alterations in original) (quoting *United States* v. *Grandinetti*, 564 F.2d 723, 727 (5th Cir. 1977)). Prosecutors may not "undermine" their promises to defendants, and "it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself." *Id.* at 1270–71 (quoting *United States* v. *Canada*, 960 F.2d 263, 269 (1st Cir. 1992)). To that end, "in fulfilling its promise, the government 'cannot rely upon a "rigidly literal construction of the language" of the agreement,'" *United States* v. *Scott*, 469 F.3d 1335, 1338 (10th Cir. 2006) (quoting *United States* v. *Hand*, 913 F.2d 854, 856 (10th Cir. 1990)), and "owes the defendant a duty to pay 'more than lip service' to a plea agreement," *Cachucha*, 484 F.3d at 1270 (quoting *United States* v. *Saxena*, 229 F.3d 1, 6 (1st Cir. 2000)).

There is no dispute the government made a promise to Mr. Ruiz in his plea agreement to recommend a sentence at the low end of the Guidelines. And

13

based on the foregoing, the law plainly establishes the government's duty to fulfill that promise. But whether the prosecutor's conduct *in this case* constituted breach—or put differently, whether Mr. Ruiz satisfied the first prong of the plain-error standard—is a closer question.[6] Assuming without

---

[6] We have no trouble concluding the government complied with the literal terms of the plea agreement. In the plea agreement, the government promised "[t]o recommend the defendant receive a sentence at the low end of the U.S.S.G[.] sentencing range determined appropriate by the U.S. Probation Office." R.I at 23. Here, the low end of Mr. Ruiz's Guidelines range was 51 months' imprisonment. And at sentencing, the prosecutor said: "I am not suggesting in any way that I am asking for a sentence of anything other than 51 months. I think that's what the court should impose." R.III at 27.

According to Mr. Ruiz, however, the prosecutor's remarks—"I want to make very clear that my comments that I am about to make, I am not suggesting in any way that I am asking for a sentence of anything other than 51 months"—followed by a discussion of Mr. Ruiz's criminal history, amounts to "apophasis." Op. Br. at 13. This rhetorical "device has the effect of emphasizing the subject while maintaining plausible deniability." Op. Br. at 14 (quoting *Robinson* v. *Perales*, 894 F.3d 818, 829 (7th Cir. 2018)). The government resists this conclusion, saying it mentioned Mr. Ruiz's criminal history in advocating for a 51-month sentence only to ensure the court did not depart or vary *downward* from the Guidelines range. But the government's position is not fully supported by the record. Mr. Ruiz never sought a downward departure or variance, and the PSR suggested an *upward* departure or variance might be warranted based on Mr. Ruiz's criminal history. Notably, the prosecutor did not explain at sentencing why the government's 51-month recommendation was appropriate *notwithstanding* Mr. Ruiz's criminal history.

Under these circumstances, we cannot say the government was a "[]persuasive advocate" for its promised recommendation. *See United States* v. *Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007). And as a general matter, we expect more from the government than technical compliance with a plea

14

deciding that a plain error occurred, Mr. Ruiz's failure to satisfy the third prong is decisive, as we will explain.

## B

### 1

"To satisfy the third prong of plain-error review, a defendant generally must demonstrate that an error was 'prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *United States* v. *Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (*en banc*) (quoting *United States* v. *Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008)). "This is a lesser standard than proof by a preponderance of the evidence, and it is satisfied by 'a probability sufficient to undermine confidence in the outcome.'" *United*

---

agreement's terms. *See United States* v. *Villa-Vazquez*, 536 F.3d 1189, 1199 (10th Cir. 2008) (recognizing the "heightened responsibility" placed on the government as "to all matters relating to the plea agreement" (quoting *United States* v. *Wood*, 378 F.3d 342, 348 (4th Cir.2004))); *Cachucha*, 484 F.3d at 1270 (concluding "it is improper for the prosecutor to inject material reservations about the agreement"); *United States* v. *Mojica-Ramos*, 103 F.4th 844, 850 (1st Cir. 2024) (explaining "because '[a] defendant who enters into a plea agreement waives a panoply of constitutional rights[,] . . . we hold prosecutors to "the most meticulous standards of both promise and performance"'" (alterations in original) (quoting *United States* v. *Almonte-Nuñez*, 771 F.3d 84, 89 (1st Cir. 2014))); *accord United States* v. *Bagley*, 473 U.S. 667, 675 n.6 (1985) (explaining "the prosecutor's role transcends that of an adversary" and noting the government's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done" (alteration in original) (quoting *Berger* v. *United States*, 295 U.S. 78, 88 (1935))).

*States* v. *Perez-Perez*, 992 F.3d 970, 974 (10th Cir. 2021) (quoting *Bustamante-Conchas*, 850 F.3d at 1138); *see also United States* v. *Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) ("The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different."). Here, where the error asserted is a breach of the plea agreement, there must exist a reasonable probability that Mr. Ruiz "would have received a lesser sentence absent the government's breach." *Mendoza*, 698 F.3d at 1310. Mr. Ruiz cannot make this showing.[7]

**2**

Mr. Ruiz claims "'[t]he government's breach of the plea agreement focused the district court's attention' on the basis for the upward departure." Op. Br. at 21 (quoting *United States* v. *Navarro*, 817 F.3d 494, 501 (7th Cir.

---

[7] The district court imposed a custodial sentence of 70 months. The government argues Mr. Ruiz must show "a reasonable probability existed for *a sentence of 51 months* absent the alleged breach of the plea agreement." Ans. Br. at 22 (emphasis added). Mr. Ruiz maintains the government—by insisting he show the court would have imposed a 51-month sentence—misconstrues what is demanded by the reasonable-probability standard. We agree with Mr. Ruiz. We have never required a defendant to show a reasonable probability that he would have received the *exact* sentence requested but only "a *lesser* sentence absent the government's breach." *United States* v. *Mendoza*, 698 F.3d 1303, 1310 (10th Cir. 2012) (emphasis added). Mr. Ruiz would satisfy his burden on the third prong if he showed that, absent the government's statements at sentencing, there is a reasonable probability of *any* sentence below 70 months.

2016)). According to Mr. Ruiz, the district court based its sentencing decision on Mr. Ruiz's criminal history, which the government emphasized at sentencing. This connection between the prosecutor's discussion of criminal history, and the district court's reliance on it, Mr. Ruiz argues, establishes the requisite reasonable probability. *See* Reply Br. at 11 ("The relationship between those two things is why we have met our minimal 'reasonable probability' burden at the third prong of the plain-error analysis."). We disagree.

The record confirms that, from the outset of the sentencing hearing, the district court was seriously troubled by Mr. Ruiz's significant criminal history. The district court began the sentencing hearing by immediately emphasizing Mr. Ruiz was in criminal history category VI. The district court then observed Mr. Ruiz had accumulated significantly more criminal history points (18) than required to put defendants in the highest criminal history category (13). These concerns were expressed by the district court based on its independent review of the PSR—*before* the prosecutor even spoke at the sentencing hearing.

Throughout the hearing, the district court made clear it had carefully considered the PSR, referencing facts about Mr. Ruiz's criminal history that the government did not mention.[8] For example, the district court

- pointed out how many pages of the PSR were devoted to Mr. Ruiz's criminal history;

- cited a specific paragraph describing that Mr. Ruiz was imprisoned for more than half of the last 15 years;

- observed "the report indicates that [Mr. Ruiz's] own mother says that she feels safer when he's incarcerated," R.III at 36;

- recalled Mr. Ruiz's age when he was convicted of his first crime; and

- summarized Mr. Ruiz's various offenses based on the court's own recollection of the PSR.

It is entirely appropriate for a district court to consider reliable information about a defendant's criminal history when deciding whether to impose an above-Guidelines sentence. *See United States* v. *Jackson*, 921 F.2d 985, 991 (10th Cir. 1990) ("A district court has considerable discretion in

---

[8] If anything, the PSR—not the government—may have focused the district court's attention on the possibility of an upward departure or variance based on Mr. Ruiz's criminal history. *See* R.II at 53 (stating an upward departure or variance "may be warranted" "[g]iven [Mr. Ruiz's] high likelihood of recidivism and having 18 Criminal History points"). Mr. Ruiz did not object to the PSR. *See* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . ."); *United States* v. *Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) ("At sentencing, the district court may rely on facts stated in the presentence report unless the defendant has objected to them." (quoting *United States* v. *Shinault*, 147 F.3d 1266, 1277–78 (10th Cir. 1998))).

appraising a defendant's criminal history."); *see also* U.S. Sentencing Guidelines Manual § 4A1.3(a)(4)(B) (U.S. Sent'g Comm'n 2023) (authorizing upward departures based on "the extent and nature of the defendant's criminal history"); 18 U.S.C. § 3553(a)(1) (requiring the sentencing court to "consider," among other factors, "the history and characteristics of the defendant"). And here, it is eminently reasonable to conclude the district court was going to vary or depart upward based on its legitimate concern about Mr. Ruiz's criminal history as reported in the PSR, notwithstanding the government's promised recommendation in the plea agreement or the prosecutor's remarks at sentencing. Under these circumstances, Mr. Ruiz cannot show the result of the sentencing proceeding would have been different absent the alleged plain error. *See United States* v. *Lopez*, No. 21-3132, 2022 WL 2965855, at *4 (10th Cir. July 27, 2022) ("The court's independent concern about Mr. Lopez's criminal history, expressed before the Government raised the issue, shows the Government's criminal history argument had little if any impact on the sentence.")[9]; *see also Puckett* v. *United States*, 556 U.S. 129, 142 (2009)

---

[9] We cite *Lopez* for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). Mr. Ruiz urges us not to rely on *Lopez* because it described the third prong of plain error review as "'rigorous' and 'demanding.'" Op. Br. at 21 (quoting *United States* v. *Lopez*, No. 21-3132, 2022 WL 2965855, at *4 (10th Cir. July 27, 2022)). Mr. Ruiz also claims *Lopez* did not acknowledge that plea agreement breaches concern

(explaining defendants cannot show prejudice if they "likely would not have obtained th[e] benefits [of the plea agreement] in any event"). Given our disposition, we need not pass on the remaining elements of the plain-error standard. *See United States* v. *Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) ("Because all four requirements [of plain error] must be met, the failure of any one will foreclose relief and the others need not be addressed.").

### III

We AFFIRM Mr. Ruiz's sentence.

---

constitutional due process, which means the third prong of plain error must be reviewed less rigidly. To be sure, Mr. Ruiz is correct that the plain error standard itself, not any one element, can be fairly characterized as rigorous and demanding. *See United States* v. *Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014). But Mr. Ruiz is wrong that *Lopez* did anything but correctly state that principle. *See Lopez*, 2022 WL 2965855, at *4 ("Mr. Lopez has not met his burden under the 'rigorous' and 'demanding' plain error standard." (quoting *Rosales-Miranda*, 755 F.3d at 1258)).