**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**May 20, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JABIER BUSTOS,

    Defendant - Appellant.

No. 24-5067
(D.C. No. 4:22-CR-00428-JFH-2)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **McHUGH**, **EID**, and **CARSON**, Circuit Judges.

_____

This appeal involves the government's alleged breach of a plea agreement it entered into with Jabier Bustos. In the agreement, the parties stipulated that a sentence of 151 to 188 months of imprisonment was appropriate. At sentencing, the government asked the district court to accept the plea agreement but argued for a sentence at the high end of the stipulated range. The district court rejected the plea agreement and imposed a sentence of 324 months.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

For the first time on appeal, Bustos contends that in arguing for a sentence at the high end of the stipulated range, the government breached the plea agreement by presenting and characterizing facts in a manner that resulted in the 324-month sentence. Reviewing for plain error, we conclude that Bustos has not shown an error that was plain. Therefore, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Bustos was arrested after a traffic stop uncovered a large quantity of methamphetamine. The drugs had been shipped by flatbed truck in two concrete containers to a residence in Oklahoma, where Bustos and two others used a jackhammer to open the containers and put the contents into two cars. At the residence, a search uncovered cash, more methamphetamine, other drugs (cocaine and fentanyl), and nine firearms.

Bustos pleaded guilty to one count of participating in a drug conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). The parties executed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). In the plea agreement, Bustos admitted that he "worked with a Drug Trafficking Organization in the Northern District of Oklahoma to facilitate and deliver [in] excess of 101 kilograms of methamphetamine," he "expected the Drug Trafficking Organization to pay [him] for [his] involvement," and his "participation with the organization involved escorting and overseeing the transportation of large amounts of methamphetamine." R. vol. I at 200. The parties stipulated that, based on "various factors" including Bustos's "acceptance of responsibility, the strength of the

2

evidence, judicial economy, and the interests of justice," a sentence of 151 to 188 months of imprisonment was appropriate even though that range was less than the anticipated sentencing range under the United States Sentencing Guidelines. *Id.* at 203.

In a sentencing memorandum, the government "urge[d]" the district court to accept the plea agreement, *id.* at 240, and, for the following reasons, to impose a sentence at the high end of the stipulated 151–188 month range:

- Bustos had "caused copies of the government's discovery," which was subject to a protective order, "to be shared with subjects of the ongoing investigation." *Id.* at 239.

- "Bustos was a high-ranking participant in the conspiracy due, in large part, to his relation to the leader organizer[.]" *Id.* at 240.

- Bustos's "relevant conduct involve[d] at least 137 kilograms of methamphetamine." *Id.* at 241.

- "Bustos was involved with his co-defendants in a common scheme or plan to launder illegally derived drug proceeds." *Id.*

- "The degree to which the leader organizer relied upon Bustos [was] clearly demonstrated through the authority Bustos exercised over other conspirators." *Id.*

- "Bustos participated in a scheme that involved trafficking of bulk quantities of multiple types of controlled substances." *Id.*

- His "criminal conduct reflect[ed] a pattern of behavior." *Id.*

- "A sentence at the high end of the stipulated guidelines range would . . . help the need to avoid unwarranted sentencing disparities as required by [18 U.S.C.] § 3553(a)(6)." *Id.*

3

At a hearing intended for sentencing, the district court considered Bustos's objection to the total converted drug weight (432,086 kilograms) used to calculate a base offense level of 38 in the presentence investigation report ("PSR"). The court asked the parties to submit a stipulation regarding the drug weight, stating that if the court recalculated the offense level and took account of Bustos's other objections, "we may have a guideline range that gets me in a more comfortable area." R. vol. III at 55:15–16; *see also id.* at 56:6–7. One of those other objections was to the PSR's application of a leader-organizer adjustment to the offense-level calculation. The court also told the parties that it had "serious concerns" about the plea agreement because it was "generous by a fairly significant margin" given the "large amount of drugs" at issue. *Id.* at 56:4–8. Consequently, the court reset sentencing.

Apparently, the parties did not reach a stipulation on total converted drug weight—no stipulation appears in the record, and a revised PSR identified a higher total converted drug weight (1,100,818.5 kilograms) than in the initial PSR. The revised PSR calculated a total offense level of 39 as follows: a base offense level of 38 based on total converted drug weight; a two-level upward adjustment based on the nine firearms found at the residence; a two-level upward adjustment for Bustos's role in the offense as an organizer, leader, managers, and/or supervisor; and a three-level reduction for timely acceptance of responsibility.

The government then filed "Government's Sentencing Memorandum And Motion for Downward Variance." R. vol. I at 266. The government asked for "a sentence at the high end of the stipulated [range]" and asserted that a "[v]ariance is

4

warranted in this case based on the nature and circumstances of the offense and the

need to avoid disparity in sentencing." *Id.* The government again "urge[d]" the

district court to accept the plea agreement, *id.* at 269, and asked the court to impose a

188-month sentence, arguing:

- "Bustos was a local participant in the conspiracy with ties to the leader organizer[.]" *Id.*

- Bustos's "relevant conduct involve[d] at least 500 Grams of methamphetamine." *Id.*

- Prior to the parties entering into the plea agreement, "the government [had] alerted the Court of Bustos'[s] effort to share the government's discovery with other unindicted coconspirators." *Id.* at 269–70.

- Bustos's "criminal conduct reflects a pattern of behavior between 2005 and 2012." *Id.* at 270.

- "A sentence at the high end of the stipulated guidelines range would also help avoid unwarranted sentencing disparities as required by § 3553(a)(6)." *Id.*

- "Bustos was a local member of the organization who was trusted to oversee or manage the removal of contents from the concrete containers. While Bustos was 'boots on the ground,' he worked at the direction of others." *Id.* at 271.

The government also pointed out that co-defendant Anthony Abel Flores

"received a sentence of 135 months['] incarceration," but unlike Flores, Bustos had a

"managerial role" and had "engaged in post indictment conduct which involved an

effort to make the government's discovery available to unindicted coconspirators,"

which "was egregious and alarming." *Id.* Thus, although Flores "received a

non-guidelines sentence," the government did not think Bustos "should receive the

exact same sentence"; instead, "[a] 188-month sentence would be proportionate to Bustos'[s] relevant conduct and take[] into account his post-indictment conduct." *Id.*

The district court re-convened to sentence Bustos. The court determined his drug-weight objection was moot because he had stipulated in the plea agreement that his offense involved more than 101 kilograms of methamphetamine, which was more than enough for a base offense level of 38. The court then inquired of the plea agreement, stating that "there's no secret that I was not a big fan of [the plea agreement] last time," and observing that Bustos had not filed "a sentencing memorandum to try to convince me why I should accept the agreement." R. vol. III at 66:13–14, 18–19. The court found that, adjusted for acceptance of responsibility, Bustos's "total offense level is 39, his criminal history category is III," and "the sentencing range for imprisonment is 324 to 405 months." *Id.* at 68:1–4. The court invited the parties to address whether it should accept the plea agreement, reminding them again that the court "was not a particular fan of this plea agreement . . . because it seems very, very light to me." *Id.* at 69:2–5.

Government counsel argued that the factor that "weighs heaviest" in favor of acceptance of the plea agreement was avoiding "disparity in sentencing." *Id.* at 69:19–22. Counsel explained that she compared Bustos with Flores because their roles in the conspiracy were most similar—both were "kind of isolated from being required to transport the bulk quantity of methamphetamine that was found in the companion car," and "[t]hey were not the worker bees who were directed to make particular deliveries." *Id.* at 70:8–12. Counsel further explained that although

Bustos was "not a leader-organizer[,] . . . the government view[ed] him as a manager" of "this particular group or this cell or this tier of the organization." *Id.* at 70:16–18. Counsel concluded by stating she "believe[d] disparity in sentencing is the [§ 3553(a) factor] the United States is arguing in reference to the court accepting or considering the parties' stipulation." *Id.* at 71:1–4.

Defense counsel argued that Bustos and Flores "engaged in the same conduct," *id.* at 71:24; noted that the court had accepted the plea agreements of Flores and two other co-defendants; emphasized the government's agreement that a sentence in the stipulated range was appropriate; described Bustos's personal characteristics and large support group; and asked for a sentence "somewhere within the stipulated range," *id.* at 73:21.

The district court rejected the plea agreement. The court stated that Bustos's participation in the drug-trafficking scheme involved "very large quantities of methamphetamine, cocaine, and then additional fentanyl." *Id.* at 74:8–9. The court also quoted or referred to four points the government had made in its sentencing memoranda: Bustos had participated in a scheme to traffic bulk quantities of controlled substances; he had a pattern of criminal behavior; he was trusted to oversee or manage removal of the methamphetamine from the concrete containers; and he allegedly tried to make the government's discovery available to unindicted co-conspirators, which, if "true," was "egregious and alarming." *Id.* at 74:24–25. The court further observed that Bustos had previous convictions for drugs, robbery with a firearm, and assault and battery with a dangerous weapon; he had been

7

sentenced to 10 years in prison; and almost immediately upon his release, he started to work for the drug trafficking organization involved in this case.

After Bustos declined the opportunity to withdraw his guilty plea, the district court enumerated several factors in support of its finding that "a sentence within the advisory guideline range . . . is reasonable and sufficient but not greater than necessary to meet [§ 3553(a)'s] requirements and objectives":  the large quantities of drugs involved (101 kilograms of methamphetamine, as stipulated in the plea agreement; and 225 grams of cocaine and 197 grams of fentanyl, which the court apparently gleaned from the revised PSR); the conspirators' possession of nine firearms; and Bustos's role as "an organizer, leader, manager, and/or supervisor." *Id.* at 77:11–17.  The court then sentenced Bustos to 324 months in prison.  Bustos timely appeals.

## II.  DISCUSSION

### A.    Standard of review

Bustos claims the government breached the plea agreement.  Because Bustos did not object at sentencing to the government's alleged breach of the plea agreement, we review only for plain error.  *See United States v. Ruiz*, 125 F.4th 1342, 1348 (10th Cir. 2025).  "Under this standard of review, we reverse only when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

**B.    Analysis**

Bustos contends the government breached the plea agreement by arguing for a sentence at the high end of the stipulated range of 151–188 months without first justifying why the district court should accept the plea agreement's substantial downward variance from the guidelines range of 324–405 months.  His overarching contention is that "the government chose, emphasized, and characterized factors that could have the effect only of arguing against the agreed-upon downward variance." Aplt. Opening Br. at 18.

In determining whether the government has breached a plea agreement, we first "examine the nature of the government's promise" by "apply[ing] general principles of contract law" based on "the express language used in the [plea] agreement."  *United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998).  We then "evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered."  *Id.*

Here, the relevant promise is the government's stipulation that a sentence in the 151–188 month range was appropriate.  Bustos could reasonably understand this promise to mean the government would ask the district court to accept the plea agreement and could argue for a 188-month sentence but no more.  *See United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007) (government's agreement to a sentence within an agreed-on range prohibits it from seeking a sentence above that range).  Bustos concedes this point in his reply brief, acknowledging that "the plea agreement allowed the government to argue for a sentence at the top of the stipulated

range" provided that the government was "careful to ensure that the court understood that it wanted a sentence far below the actual guideline range." Aplt. Reply Br. at 8.

Although Bustos claims the government failed to walk this line, we disagree. In both of its sentencing memoranda and at the final sentencing hearing, the government urged the district court to both accept the plea agreement and impose a sentence at the high end of the stipulated range [1] In explaining why it thought a downward variance from the guidelines range was appropriate, the government relied on the need to avoid unwarranted sentencing disparities between Bustos, who could have been sentenced to at least 324 months in prison under the guidelines range, and Flores, the co-conspirator most similarly situated to Bustos, who also had pled guilty but received a sentence of only 135 months. To that end, the government pointed out differences between Flores and Bustos warranting a 188-month sentence rather than a 135-month sentence, relying on a number of facts concerning Bustos and the conspiracy.

Bustos claims this was all just lip service to the plea agreement, arguing that the government effectively undercut the stipulated sentencing range by selecting and negatively characterizing evidence and other factors that harmed or foreclosed his

---

[1] As Bustos notes, *see* Aplt. Opening Br. at 6, 8, the government's arguments in both of its sentencing memoranda appeared under the heading "Application of the [§] 3553(a) Factors Support Imposition of Guidelines Sentence," R. vol. I at 240, 269. The arguments themselves, however, make clear that the government was not advocating for a guidelines sentence but for one at the high end of the stipulated range. We therefore construe the heading as a misstatement likely due to editorial oversight.

chances of receiving a sentence in the agreed-upon range.  Bustos claims the government should have argued for the need to avoid sentencing disparities, neutrally described factors weighing against him, and asked the court to accept the plea agreement.  He adds that although the plea agreement permitted the government to argue for a 188-month sentence, "the agreement required that [the government] not implicitly argue for a higher sentence than the stipulated range," and if the government chose to argue for a 188-month sentence, "it needed to be careful to ensure that the court also understood that it wanted a sentence far below the actual guideline range."  Aplt. Reply Br. at 8.  He contends that instead, the government "characterized his post-offense behavior, criminal record, and role in the [offense] in a highly damaging and adversarial manner" that supported a within-guidelines sentence and provided the basis for the district court's rejection of the plea agreement.  Aplt. Opening Br. at 21 (emphasis omitted).

We conclude that Bustos has not demonstrated that any error was plain.  To show plain error, Bustos must establish that the error was "contrary to well-settled law." *Ruiz*, 125 F.4th at 1348 (internal quotation marks omitted).  "And well-settled law exists when either the Supreme Court or this court has addressed the issue." *Id.* (brackets and internal quotation marks omitted).

Bustos is correct that "[t]he government owes the defendant a duty to pay more than lip service to a plea agreement," and that a breach may occur when government counsel "is not only an unpersuasive advocate for the plea agreement, but in effect, argues against it." *Cachucha*, 484 F.3d at 1270 (brackets and internal

11

quotation marks omitted). But *Cachucha* and several other cases Bustos relies on are distinguishable because none involved the government permissibly arguing for a sentence at the high end of an agreed-upon sentencing range while simultaneously asking the sentencing court to accept the plea agreement. Because Bustos has not identified any Supreme Court or Tenth Circuit precedent suggesting that the government's argument for a sentence at the high end of the stipulated range breached the plea agreement, he has not met his burden to demonstrate that any error was plain.

We begin with *Cachucha*. In that case, the government "promised not to seek a higher offense level" than it had stipulated to in the plea agreement "or an upward variance from the resulting Guidelines range." *Id.* at 1270. But at sentencing, the prosecutor argued that a "Guidelines-based sentence . . . was way too low," explaining that the guidelines range had been amended significantly upward since the governing edition of the Guidelines Manual, and therefore the guidelines range made no "sense to him as a professional prosecutor." *Id.* (internal quotation marks omitted); *see also id.* at 1268–69 (discussing government's argument in detail). We said the prosecutor had made a "forbid[den] end-run[] around" the promise the government had made and improperly "inject[ed] material reservations about the agreement to which the government [had] committed itself." *Id.* at 1270.

In contrast here, the government's arguments for a sentence at the high end of the stipulated range were not an end run around the government's promise to ask for a sentence within that range but an up-the-middle request for a 188-month sentence,

which was the most its promise allowed it to ask for. And the government did not express any material reservations about the appropriateness of the stipulated range but repeatedly asked for the sentencing court to accept the plea agreement to avoid an unwarranted sentencing disparity. The district court's rejection of the plea agreement does not convert the government's performance of its obligations under the plea agreement into a breach of the agreement.

We next consider Bustos's reliance on *United States v. Hawley*, 93 F.3d 682 (10th Cir. 1996), in support of his proposition that even where the government asks a court to accept a plea agreement, the government breaches the agreement if it highlights and legally characterizes "factors that could have the effect *only* of arguing against" what it had promised to do in the agreement, Aplt. Opening Br. at 18 (emphasis added). Although his proposition itself may be sound, whether it applies depends on the nature of the government's promise and the substance of its argument. In *Hawley*, the government had promised not to oppose that the defendant (1) receive a three-level reduction in offense level for acceptance of responsibility and (2) not receive a two-level enhancement for obstruction of justice. *See id.* at 691. But at the sentencing hearing, the government argued that, based on facts set out in the PSR that it had not been aware of when it had entered the plea agreement, the record was "completely devoid" of facts amounting to "an extraordinary circumstance meriting any extraordinary credit," and that the defendant had been "unwilling to give up any information whatsoever in a timely fashion." *Id.* at 692 (internal quotation marks omitted). And the government urged the court to "come to a similar conclusion." *Id.*

13

We concluded the government had breached its promise because it "was not correcting inaccurate information," "merely stat[ing] facts," or "simply validat[ing] those facts found in the [PSR]." *Id.* at 693. Instead, the government had "provide[d] a legal characterization of [the] facts" and "argue[d] the effect of those facts to the sentencing judge," which "could *only* have the effect of opposing [the defendant's] receipt of an adjustment for acceptance of responsibility." *Id.* (emphasis added).

Unlike the promise in *Hawley*, which precluded the very argument the government made, the promise here allowed the government to characterize facts and argue their effect to the sentencing judge to the extent they supported its argument for a sentence at the high end of the stipulated range. The government did just that in arguing that the court should sentence Bustos to 188 months rather 135 months, as Flores had received. Moreover, the government stated facts it already was aware of and that were already known to the district court through the PSRs and the government's notice to the court of Bustos's disclosure of the discovery information,[2] which further distinguishes this case from *Hawley*. And the government's arguments were consistent with its obligation to bring all relevant sentencing factors to the sentencing court's attention despite promises made in the plea agreement. *See United States v. Jimenez*, 928 F.2d 356, 363 (10th Cir. 1991) ("It is clear that the fact that a plea agreement has been entered into between the government and a defendant cannot

---

[2] The government had notified the court of the breach of the protective order in February 2023, *see* R. vol. III at 1, which was some five months before the parties entered into the plea agreement and nearly a year before the government filed its first sentencing memorandum.

14

alone prohibit the government from bringing relevant information to the attention of the trial judge at the time of sentencing.  In fact, the prosecutor has an ethical duty to disclose such information . . . ."); *United States v. Stemm*, 847 F.2d 636, 639 (10th Cir. 1988) ("Disclosure of information as to the nature of the offense and each defendant's role is proper and within the Government's duty to provide, despite a promise that the Government would make no recommendation as to sentence.").

We further disagree with Bustos that the government's characterization of his role in the offense, criminal history, and post-offense conduct plainly breached the plea agreement under *Hawley*.  First, regarding Bustos's role in the offense, the government advocated for *not* viewing him as a leader-organizer, *see* R., vol. III at 70:16–18, which, as set out in the PSR, increased his offense level by two levels. Instead, the government argued Bustos was only a manager of a local cell of the organization and relied on that role as part of its effort to explain why it should sentence Bustos to more prison time than Flores.  Second, it was evident from the PSRs that Bustos had engaged in a pattern of criminal conduct, so the government's reference to that pattern did not plainly breach the plea agreement.  And third, although the government characterized Bustos's alleged disclosure of discovery information as "egregious and alarming," R. vol. I at 271, the government had no obligation to "sugarcoat the facts," *United States v. Almonte-Nuñez*, 771 F.3d 84, 91 (1st Cir. 2014).  In any event, when viewed in context, that characterization was not tantamount to a tacit suggestion that the district court should sentence Bustos to more than the 188 months the government expressly asked the court to impose.

15

For all these reasons, we conclude that, unlike the government's argument in *Hawley*, which could have only controverted the promises it made in the plea agreement, *see* 93 F.3d at 693, the government's argument here was consistent with its promise to ask for a sentence no greater than 188 months. The government's argument, therefore, could not have had the effect of *only* arguing for a greater sentence, as Bustos contends. That the district court ultimately rejected the plea agreement and imposed a 324-month sentence does not mean that was the only effect the government's arguments could have had. *Hawley*, therefore, does not constitute well-established law demonstrating that the government plainly erred.

Bustos also argues that if the government had "asked for the court to first accept the agreement (or, instead, asked for a 188-month sentence), there would have been no issue." Aplt. Opening Br. at 21. In support, he points to *United States v. Villa-Vazquez*, 536 F.3d 1189, 1197–98 (10th Cir. 2008), where we concluded that "[t]he government should have explained to the court that it had made promises in the plea agreement and then limited itself to what was permitted by . . . the plea agreement." But as we have recounted, the government did argue for a 188-month sentence, and it did so while making clear it was asking the district court to accept the plea agreement and that it wanted a sentence far below the actual guideline range.

Bustos further argues that under our decisions in *Villa-Vazquez*, *Hawley*, and *Brye*, the government can plainly breach a plea agreement even when it asks in good faith for the court to accept it. We have already explained why *Hawley* does not support finding plain error here. And we see nothing in *Villa-Vazquez* or *Brye*

16

suggesting the government's arguments in this case breached its plea agreement with Bustos.

In *Villa-Vazquez*, the government promised to recommend a two-level reduction in offense level for acceptance of responsibility and a sentence at the low end of the guidelines range. 536 F.3d at 1196. We concluded the government had done "precisely the opposite" when it "urged the probation office to remove" the reduction from the PSR and "supported the PSR's recommendation for an upward departure or variance." *Id.* (brackets and internal quotation marks omitted).

In *Brye*, the government promised to not oppose the "defendant's argument that he was entitled to a downward departure" and to defer to the sentencing "court's determination on a downward departure." 146 F.3d at 1212 (internal quotation marks omitted). We concluded the government breached its promise regarding "a downward departure for preindictment delay" when it argued it had "delay[ed] prosecution for tactical reasons and present[ed] testimony to support its position." *Id.* We also concluded the government had breached its promise "with respect to [the] defendant's motion to depart for coercion and duress" when it "obviously, albeit subtly, [took] a position on whether the defendant should receive a downward departure for coercion and duress" by "pointing out the real issue"—whether any "duress was so extreme that [the] defendant acted reasonably by breaking the law to protect himself and others"—"and highlighting the defendant's own words as one of the best methods for the court to determine this issue." *Id.* at 1213 (internal quotation marks omitted).

The circumstances in both *Villa-Vazquez* and *Brye* are far removed from the circumstances in this case. We therefore see nothing plainly erroneous under either case.

Bustos also relies on *Ruiz*, where we suggested that despite expressly stating it was not asking for anything other than a bottom-of-the-guidelines 51-month sentence, as it had promised to do, the government breached the plea agreement by mentioning the defendant's criminal history. 125 F.4th at 1350 n.6. We rejected the government's argument that it mentioned the criminal history "only to ensure the court did not depart or vary *downward* from the Guidelines range" because the defendant "never sought a downward departure or variance, and the PSR suggested an *upward* departure or variance might be warranted based on [the defendant's] criminal history." *Id.* We considered it notable that "the prosecutor did not explain at sentencing why the government's 51-month recommendation was appropriate *notwithstanding* [the defendant's] criminal history." *Id.*

Based on this discussion, Bustos argues that instead of emphasizing and negatively characterizing aggravating factors, the government should have explained why, despite his criminal history and his violation of the order protecting the government's discovery, he deserved a significant downward departure from the guidelines range. But unlike the government's promise in *Ruiz* to recommend a sentence at the *low* end of a range (the guidelines range), the government here was permitted to argue for a sentence at the *high* end of a range (the stipulated range). The government did just that, using Bustos's criminal history and his violation of the

18

protective order to support its argument that although some sentencing disparity—53 months—between Bustos and Flores was warranted, an unwarranted sentencing disparity would result if Bustos was sentenced to anything more than 188 months. *Ruiz*, therefore, does not support a finding of plain error in this case.

Finally, Bustos argues that *United States v. Mojica-Ramos*, 103 F.4th 844 (1st Cir. 2024), involved the government's breach of a plea agreement under circumstances similar to those in this case. But *Mojica-Ramos* is a First Circuit case, so it cannot constitute well-settled law against which we may evaluate the government's conduct here for plain error. *See Ruiz*, 125 F.4th at 1348 (for purposes of plain-error review, "well-settled law exists when either the Supreme Court or this court has addressed the issue" (brackets and internal quotation marks omitted)).[3]

---

[3] Even if *Mojica-Ramos* could serve as well-settled law for purposes of a plain-error analysis, it is distinguishable. In *Mojica-Ramos*, the government promised to "ask for a sentence within the applicable Guidelines range and never explicitly requested an above-guidelines sentence." 103 F.4th at 850. But in its sentencing memorandum, the government submitted 250 photos extracted from the defendant's cell phone depicting firearms and drugs, and a cellphone video allegedly showing a person who looked like the defendant "recklessly brandishing an assault-style rifle by repeatedly pointing the barrel at the individual who [was] recording the video." *Id.* at 847 (internal quotation marks omitted). The government argued this "alarming" evidence suggested the defendant would "participat[e] in other criminal activity involving high-capacity, high-powered weapons of war," and it encouraged the district court to consider the "danger to the community and the serious nature of the offense" as "exceptional." *Id.* (internal quotation marks omitted). The First Circuit concluded this line of argument breached the plea agreement because it could "*only* be understood to have emphasized [the defendant's] wrongdoing" and as "advocating for the imposition of a higher sentence than an agreed-upon guidelines term." *Id.* at 853 (emphasis added) (brackets and internal quotation marks omitted). As we have already observed, the government's argument in this case could be understood as advocating for a maximum sentence within the agreed-upon range, as it had promised to do.

Given our conclusion that Bustos has failed to show that any error was plain, we need not address the remaining elements of the plain-error standard. *See id.* at 1352.

### III. CONCLUSION

We affirm Bustos's sentence.

Entered for the Court

Carolyn B. McHugh
Circuit Judge